591 A.2d 1133

### In re ADOPTION OF M.A.R. and Involuntary Termination of Parental Rights of E.M.G.

**Appeal of E.M.G., the Natural Mother of the Child.**

Superior Court of Pennsylvania.

Argued April 18, 1991.

Filed June 6, 1991.

132

Guy A. Messick, Media, for appellant.

James E. DelBello, Media, for Children and Youth Services, participating party.

Before MONTEMURO, BECK and TAMILIA, JJ.

MONTEMURO, Judge.

This is an appeal from an order entered in the Court of Common Pleas of Delaware County terminating appellant's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5)[1]. The child, M.A.R., was born out of wedlock on March 16, 1988, and has been in the custody of Children and Youth Services (CYS) since June 17, 1988.[2] Appellant was sixteen at the time of M.A.R.'s birth. In August, 1989, CYS filed a Petition for Involuntary Termination of Parental Rights of both natural parents, and the father's rights were terminat-

1. Title 23 Pa.C.S.A. § 2511(a)(5) provides:
   (a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
   *    *    *    *    *    *
   (5) The child has been removed from the care of the parent by the court or under the voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

2. We note that the record reflects that there is a family ready to adopt M.A.R.

ed on September 25, 1989. The matter was continued until January 18, 1990 with respect to the mother. After a hearing on that date, the trial court entered an order terminating mother's parental rights; an appeal was filed. In March, 1990, CYS filed a petition to reopen the case, and appellant's appeal was dismissed. A second hearing was held on May 24, 1990 during which evidence was presented that appellant had lied to the court during the first hearing. The trial court entered a final decree terminating appellant's rights on May 30, 1990, and this appeal followed.

Appellant has raised the following three issues on appeal: 1) whether CYS has met its burden under 23 Pa.C.S.A. § 2511(a)(5); 2) whether the admission of evidence concerning the father and his alleged involvement with drugs is irrelevant and unduly prejudicial to appellant; and 3) whether CYS's refusal to permit appellant to have contact with the father as a condition of not terminating appellant's parental rights is a denial of her Constitutional rights. We will address each *seriatim.*

Preliminarily, we note that absent a showing by clear and convincing evidence that a parent's rights should be terminated, no such termination may occur. Additionally, this Court's scope of review in termination cases is limited to a determination of whether the decision by the trial court was supported by competent evidence. *In re Adoption of T.M.,* 389 Pa.Super. 303, 305, 566 A.2d 1256, 1257 (1989); *In re J.G.J., Jr.,* 367 Pa.Super. 425, 429, 532 A.2d 1218, 1220 (1987). "If our comprehensive review of the record does not reveal an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's findings, the order must stand." *Id.* 532 A.2d at 1220.

In this case, the evidence demonstrates that M.A.R. was removed from his parents' home because both his father and his mother were intravenous drug abusers who were not providing proper care for him. Due to his mother's addiction during pregnancy, M.A.R. suffers from severe medical problems including hypospadias, and chronic hypo-

thyroid condition, and has been hospitalized repeatedly with pneumonia. He has had several operations to repair hernias, and he is developmentally delayed. Because of these infirmities, M.A.R. must be given medication constantly, and he must be taken to the doctor for blood tests regularly. Appellant's failure to meet these parental responsibilities led to the removal of the child.

Since the time that M.A.R. was removed, appellant has not undergone a full drug evaluation and treatment as ordered by the court. She claims to be drug free, but refuses to prove it to the court or to CYS. Rather, she ran away from a residential treatment facility, and lied to the hospital workers about her reasons for missing the evaluation appointments. Ms. Hume of CYS testified that the agency offered all of the available services to appellant, and that there "were no further services the Agency can provide that would make Ms. G. focus on M.A.R.'s needs so that she could safely parent him." N.T., January 18, 1990 at 13.

Appellant's first contention, that CYS did not meet its burden under 23 Pa.C.S.A. § 2511(a)(5) is misplaced. CYS had the burden to prove, by clear and convincing evidence, that each of the five elements of § 2511(a)(5) were present. There is no question about the first: M.A.R. had been removed from his mother's care for over six months. Next, the trial court correctly determined that the conditions which led to the removal continue to exist. Appellant argues that she is now living in a clean, stable home and that she is no longer using drugs, and therefore the pre-existing conditions have been eliminated. However, appellant has refused to submit to drug evaluation and treatment; there is no objective proof that appellant no longer abuses drugs. Additionally, M.A.R.'s natural father still resides with appellant and was recently convicted of an illegal drug offense. The presence of a convicted drug user/seller in the home does not argue the existence of a stable environment.

Third, appellant has not remedied the conditions within a reasonable amount of time. A parent "has an affirmative duty to work toward reunification." *In re Baby Boy P.*, 333 Pa.Super. 462, 469; 482 A.2d 660, 664 (1984) (*citing In re Interest of C.M.E.*, 301 Pa.Super. 579, 586, 448 A.2d 59, 63 (1982)). At the time of the hearings, M.A.R. had been placed with CYS for two years. During that time, appellant continued to live with the natural father, refused drug testing, ran away from a residential treatment facility, and was often late for visits with the child or missed them altogether. CYS attempted to provide services but to no avail; appellant has not remedied, nor tried to remedy, the problems that existed in June, 1988. In *In re Adoption of Michael, J.C.*, 506 Pa. 517, 486 A.2d 371 (1984) the Pennsylvania Supreme Court stated:

> The legislature in adopting the Adoption Act concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties. *In re William L.*, 477 Pa. 322, 345, 383 A.2d 1228, 1239 (1978). Instantly, appellee has demonstrated that she would be incapable of meeting the child's essential needs. The state is therefore permitted to intervene to protect the "physical or mental well being" of the child. Although we are faced with a situation where the needs of the parent in keeping the child conflict with the interest of the child, the "legislature has mandated that the interests of the weaker party, the child, should prevail." *Id.*, 477 Pa. at 339, 383 A.2d at 1236.

506 Pa. at 524, 486 A.2d at 375. As in *Michael, J.C.*, appellant in the present case has demonstrated her inability to care for the child, and therefore M.A.R.'s needs must prevail.

Next, CYS demonstrated that "the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal" of M.A.R.. 23 Pa.C.S.A. § 2511(a)(5). As was stated above, Ms. Hume testified that CYS provided as many services as possible. In a CYS report dated September 25, 1989 Ms. Hume listed

the services that were made available to appellant after M.A.R. was placed:

1. We referred Miss G. repeatedly for drug evaluations and treatment and transported her to two of these appointments.

2. We provided counseling during home and office visits.

3. Miss G. was repeatedly offered the option to be placed in a foster home where she could reside with her child.

4. Regular visitation was provided for Miss G. with her child.

5. Extensive transportation arrangements were made for family visitation to occur.

6. Several collateral contacts were made with Delaware Police and child welfare authorities when Miss G. was arrested for shoplifting in Delaware.

7. We explored relatives as resources to care for the child.

CYS Report, September 25, 1989 at 4–5. Appellant did not change her lifestyle as a result of the above listed services or those offered her from the time of the report through the final hearing in May, 1990. CYS amply demonstrated its efforts to provide services in the past, and the strong probability that further services in the future would not assist appellant in caring for the special needs of her child.

Finally, CYS demonstrated that termination of appellant's parental rights would best serve the needs and welfare of the child. Appellant argues that she has had a second child that she is able to provide for, and therefore could properly care for M.A.R. as well. We disagree. First, we note, as did the trial court, that the second child, who may or may not be well taken care of, is irrelevant to the instant case. M.A.R., our only concern herein, has special medical needs, and appellant has done very little to prove that she is now able to take responsibility for his needs, irrespective of her abilities toward any other child. *See In re D.K.W.*, 490 Pa. 134, 415 A.2d 69 (1980) (one factor to consider in termination proceeding was mother's lack of interest in learning

to care for child's special need; child needed home therapy for a hip deformity); *In Interest of Coast*, 385 Pa.Super. 450, 561 A.2d 762 (1989) (trial court appropriately considered the fact that the parents could not provide for the children's minimal needs let alone their special care needs; one child was mentally retarded and the other had emotional problems), *allocatur denied*, 525 Pa. 593, 575 A.2d 560. Appellant has lied to the court and to CYS about her living arrangements, and she has proven no change in her drug habit. M.A.R. needs constant attention, which appellant has failed to provide in the past. We find, accordingly, that the trial court did not abuse its discretion in concluding that appellant was not able to provide that attention.

Appellant's next issue on appeal, that the admission of evidence concerning the natural father's alleged involvement with drugs was irrelevant and unduly prejudicial, is also without merit. M.A.R.'s natural father's parental rights have been terminated, and therefore he has no rights to be with M.A.R., nor any responsibility for the child's care. The evidence that he was convicted of illegal drug activity was admitted to answer the question, "[d]oes that person who is a convicted drug user, dealer and so forth—does he frequent the house in which she allegedly lives with her child who is involved here?" The trial judge then agreed with appellant's counsel that parental rights are not terminated every time a person is convicted of using drugs, however the judge stated that

we know what the background is here and we've already terminated the rights of the natural father. The record is already replete with the evidence of the association of this woman with that man and consequently it puts us and you and Jim Del Bello [counsel for CYS] on guard that that's one of the things that might happen to this child. And all of us here are concerned about what's going to happen to that child....

N.T., May 24, 1990 at 5–6. The natural father's convictions were relevant to the trial court's ability to assess appellant's home environment. A child cannot be returned to a

home in which drug activity is occurring, especially in a case such as the present one where the child was originally removed due, in part, to the parents' drug abuse. The evidence was, therefore, not irrelevant and not unduly prejudicial.

■ Finally, appellant argues that CYS's refusal to allow appellant to have contact with the natural father as a condition of not terminating her parental rights is a denial of her Constitutional rights of free association and equal protection. We disagree. As the trial judge stated, the concern in this case is M.A.R.. Both CYS and the trial court made the determination that appellant was incapable of having contact with M.A.R.'s natural father and providing the care that M.A.R. both needs and is entitled to, as apparently she places the needs of the father before those of the child. If appellant is unwilling to make changes in her life, as she demonstrated, the court had no choice but to terminate her rights. We see no abuse of discretion in that decision, nor a violation of appellant's Constitutional rights.

M.A.R. is a special needs child requiring ongoing and elaborate medical care. Appellant has been unable or unwilling to provide consistent attention to M.A.R., and has not demonstrated any change in her lifestyle such as would fit the level of care that the child requires. Appellee has met its burden of proving, by clear and convincing evidence, that appellant is unable to meet her parental responsibilities. In the instant case, therefore, the needs and welfare of the child are best served by placing him with another family. Thus, the order of the trial court is affirmed.

Order affirmed.