424 Pa. Superior Ct. 296 (1993)
622 A.2d 388
In re E.S.M.
Appeal of GREGORY C. and Barbara A. Hutchins.
Superior Court of Pennsylvania.
Argued October 29, 1992.
Filed March 26, 1993.
*297 *298 *299 Gregory R. Reed, Harrisburg, for appellants.
Before DEL SOLE, POPOVICH and HUDOCK, JJ.
POPOVICH, Judge:
This is an appeal from the decree entered in the Court of Common Pleas of Dauphin County which denied Appellants' petition to terminate the parental rights of Appellee, the natural father of E.S.M. Appellants, Gregory and Barbara Hutchins, wish to adopt E.S.M., and the child's natural mother also desires the adoption to occur. Upon review of the record, we reverse the decision below and remand for entry of an order terminating Appellee's parental rights.
Instantly, the court below found that Appellants failed to prove by clear and convincing evidence that Appellee demonstrated a settled intent to relinquish his parental claim. The court also found that Appellants failed to establish that Appellee neglected or failed to perform his parental duties under the circumstances. Herein, Appellants question those rulings, and we find that Appellants did prove by clear and convincing evidence that Appellee, in fact, failed to perform parental duties for a period of at least six months. Thus, his parental rights should have been terminated by the court below.
Turning to the facts of this case, the record reveals: During 1988, K.A.M., the child's mother, and Appellee resided together as paramours in Phoenix, Arizona. K.A.M. became pregnant to Appellee during this time period. Appellee was aware that K.A.M. was pregnant. During her sixth or seventh month of pregnancy, K.A.M., without any warning to Appellee, left Arizona while Appellee was at work. K.A.M. did not notify Appellee of her future plans or whereabouts.
*300 After leaving Arizona, K.A.M. initially resided with her sister in New Holland, Pennsylvania. Subsequently, she moved into the Women's Shelter at the Bethesda Mission in Harrisburg, Pennsylvania. On March 11, 1989, K.A.M. gave birth to E.S.M. who was born with a bronchial infection. Appellant Barbara Hutchins, Director of the Children's Ministries at the Bethesda Mission Women's Shelter, offered to care for the baby in Appellants' first floor apartment at the shelter until E.S.M. recovered from her infection. Appellant Barbara Hutchins made this offer because the upper floors of the Mission were drafty and unsuitable for a sickly child.
E.S.M. began living with Appellant Barbara A. Hutchins and her husband, Appellant Gregory Hutchins, at three weeks of age. Appellants obtained custody of E.S.M., at the request of K.A.M., on April 23, 1989. K.A.M., on May 8, 1989, signed a written consent to the adoption of E.S.M. by Appellants. On May 26, 1989, Appellants filed a report of intent to adopt E.S.M.
In June of 1989, K.A.M. traveled to Arizona and presented Appellee with a form for him to sign evincing his consent to the adoption. K.A.M. arrived at Appellee's apartment when Appellee was leaving for work. The discussion of adoption was brief, and the papers were left with Appellee. The form was accompanied by a self-addressed envelope in order for the papers to be sent to Appellants' counsel. However, the precise whereabouts of E.S.M., at this time, were not specifically disclosed to Appellee. After their brief encounter, K.A.M. did not inform Appellee of where she could be contacted. K.A.M. stayed for a while in Arizona with a cousin, then left for Minnesota for an undisclosed period and eventually moved back to Pennsylvania.
Appellee, a high school drop-out, took the papers to his sister, Ronnette Newsome, for her perusal. The papers were later misplaced by Ms. Newsome. However, prior to misplacing the papers, Ms. Newsome, in July of 1989, telephoned Appellants' counsel regarding the details of the adoption. Shortly thereafter, Appellant Barbara Hutchins telephoned Ms. Newsome, to discuss the adoption and to ask her to give *301 Appellee her telephone number. This message was not received by Appellee until two or three months later. Sometime in November of 1989, Appellant Barbara Hutchins again attempted to contact Appellee through Ms. Newsome. However, Ms. Newsome's phone number was no longer in service. In March of 1990, Appellant Barbara Hutchins contacted Appellee's other sister, Kimberly Barnes, since Appellee still had not contacted Appellants or their counsel about the adoption. Eventually, Ms. Barnes contacted Appellee and again Appellee was given Appellants' telephone number. About the same time as Appellants call to Ms. Barnes, Appellants' attorney wrote to Appellee and his parents concerning the adoption. On March 21, 1990, Appellee finally contacted Appellants in regard to the adoption. During this conversation, he informed Appellants that he had no desire to sign the adoption papers.
Sometime between Appellee's phone call to Appellants and March 28, 1990, Appellee hired an attorney in Arizona. However, this attorney was subsequently disbarred, and Appellee contacted the Legal Aid Society in Arizona which in turn helped Appellee to contact the Legal Aid Society in Harrisburg. In the interim, Appellee and his family, upon the advice of counsel, sent three packages consisting of clothes, stuffed animals and cards to Appellants' counsel for E.S.M. The three packages were postmarked June 19, 1990, July 20, 1990, and December 4, 1990.[1] Those packages and Appellee's lone telephone call to Appellants have been his only contact with his child, since he learned of her birth in June of 1989. Appellee presently resides with his paramour, Patricia Marie, and their two young sons in Phoenix, Arizona, while E.S.M. continues to reside with Appellants.
On August 6, 1991, Appellants, having been unsuccessful in obtaining Appellee's co-operation, filed a petition to terminate involuntarily the parental rights of Appellee. On October 1, 1991, a hearing was held, at which testimony was given by K.A.M., Appellants, Appellee and Appellee's mother. On January *302 31, 1992, the hearing court rendered a Decree Nisi denying the petition. The hearing court reasoned that Appellants had not proven by clear and convincing evidence that Appellee had evidenced a settled purpose of relinquishing parental claim to E.S.M. or refused or failed to perform parental duties as required by 23 Pa.C.S.A. § 2511(a)(1). Subsequently, Appellants filed exceptions, which were argued and denied. A final decree was entered on April 21, 1992, and this appeal followed.
When reviewing a decision whether to terminate involuntarily parental rights, our inquiry is limited to whether the decision of the court below was supported by competent evidence. In re Adoption of J.J., 511 Pa. 590, 593-594, 515 A.2d 883, 885-886 (1986); In re Adoption of M.A.R., 405 Pa.Super. 131, 134-135, 591 A.2d 1133, 1135 (1991); In Interest of Coast, 385 Pa.Super. 450, 468-469, 561 A.2d 762, 771 (1989). Absent an abuse of discretion, an error of law or insufficient evidentiary support for the chancellor's decision, the decree must stand. Adoption of M.A.R., 405 Pa.Super. at 134-135, 591 A.2d at 1135. Further, in a proceeding to terminate involuntarily a parent's rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing evidence" the existence of grounds for doing so. Adoption of J.J., 511 Pa. at 592-594, 515 A.2d at 885-886; In Interest of Coast, 385 Pa.Super. at 468, 561 A.2d at 771.
Involuntary termination of the rights of a parent is governed by 23 Pa.C.S.A. § 2511, which, in pertinent part, states:
(a) General rule.  The rights of a parent in regard to a child may be terminated after a petition is filed on any of the following grounds:
(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
* * * * * *
(b) Other considerations.  The court in terminating the rights of a parent shall give primary consideration to the *303 needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.
The statute does not require a showing of both an intention to relinquish parental control and a failure to perform parental duties. Baby Boy A. v. Catholic Social Services, 512 Pa. 517, 521-523, 517 A.2d 1244, 1246 (1986); In the Matter of the Adoption of David C., 479 Pa. 1, 387 A.2d 804 (1978).
It is important to note that the statutory six-month requirement is not mechanically applied, and parents who fail to meet their parental obligations for a six-month period do not automatically forfeit their parental rights. In re Adoption of Hamilton, 379 Pa.Super. 274, 280-281, 549 A.2d 1291, 1294 (1988); In re Adoption of Ostrowski, 324 Pa.Super. 216, 219, 471 A.2d 541, 543 (1984). Rather, the court must examine the individual circumstances of the case and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants involuntary termination of that parent's rights. Adoption of Hamilton, 379 Pa.Super. at 280-281, 549 A.2d at 1294; Adoption of Ostrowski, 324 Pa.Super. at 219, 471 A.2d at 543. In making such a determination, the court must consider the barriers to exercising his or her parental rights which the parent faced in deciding whether that parent has abandoned the child. In re D.J.Y., 487 Pa. 125, 130-131, 408 A.2d 1387, 1390 (1979); Baby Boy A, 512 Pa. at 521-523, 517 A.2d at 1246; In re Baby Boy H., 401 Pa.Super. 530, 534-535, 585 A.2d 1054, 1056 (1991). To obtain benefit of this excuse, a parent must exhibit reasonable firmness in attempting to overcome the barriers or obstructive behavior of others; he or she must affirmatively demonstrate love, protection and concern for the child. Baby Boy A., 512 Pa. at 521-523, 517 A.2d at 1246; Baby Boy H., 401 Pa.Super. at 534-535, 585 A.2d at 1056.
*304 In addition, the court must consider not only the events which transpired during the six-month period, but also those actions which the parent took to rehabilitate his or her parental status after the expiration of the time period. In re Adoption of Durham, 320 Pa.Super. 508, 516-517, 467 A.2d 828, 832-833 (1983); Adoption of Hamilton, 379 Pa.Super. at 280-281, 549 A.2d at 1294-1295. However, it is well established that once the six-month statutory period of abandonment has passed, mere renewal of interest and expression of desire for the return of a discarded child do not negate the abandonment. In re J.F., 487 Pa. 115, 124-125, 408 A.2d 1382, 1387 (1979); Baby Boy A., 512 Pa. at 521-523, 517 A.2d at 1246.
Finally, once the court has determined that the requirements for involuntary termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a) have been met, the court must further inquire whether termination will clearly serve the "needs and welfare" of the child. 23 Pa.C.S.A. § 2511(b); Adoption of J.J., 511 Pa. at 606-607, 515 A.2d at 892; Adoption of Hamilton, 379 Pa.Super. at 280, 281, 549 A.2d at 1294, 1295. In answering that question, "it is the child's welfare that is paramount." Adoption of David C., 479 Pa. at 17, 387 A.2d at 812; Baby Boy A., 512 Pa. at 523-524, 517 A.2d at 1247; Adoption of Hamilton, 379 Pa.Super. at 280, 281, 549 A.2d at 1294. Applying the foregoing analysis to the facts sub judice, we rule that the lower court erred when it denied Appellants' petition for the involuntary termination of Appellee's parental rights.
First, we must decide whether the statutory requirements for termination in 23 Pa.C.S.A. § 2511(a)(1) have been satisfied. Adoption of Hamilton, at 280-281, 549 A.2d at 1294. The record reveals that Appellee was informed that he was the father of a baby girl in June of 1989. Yet, Appellee did not personally contact Appellants or their attorney concerning his daughter until March 21, 1990, almost nine months later, despite having the means to do so. The initial adoption papers which were given to Appellee in June of 1990, had Appellants' attorney's telephone number and address on them. *305 In addition, Appellants attempted to contact Appellee through his sister, Ms. Newsome, who eventually gave Appellee the phone number of Appellants. Yet, Appellee did not respond until March of 1991, well after the six-month period had expired, and then only after additional inquiries by Appellants. Therefore, we find that Appellee "by conduct continuing for a period of at least six months . . . has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).
Having determined that the statutory requirements for termination have been satisfied, we must assess any explanation of extenuating circumstances offered by Appellee, including evaluation of barriers to parenthood placed in his way by K.A.M. and Appellants. Adoption of Hamilton, at 280-281, 549 A.2d at 1294. Appellee offers several explanations for his delay in exercising his parental rights. Appellee argues that K.A.M. and Appellants placed insurmountable barriers to the performance of parental duties in his path. The record does reveal that K.A.M. consistently neglected to inform Appellee of her and the baby's whereabouts. In fact, it was not until approximately three months after the baby's birth that K.A.M., in June of 1989, informed Appellee that he had a daughter. Although, Appellee admits that he knew K.A.M. and the baby were in Pennsylvania, he submits that he had no means by which to contact K.A.M. or to locate his daughter. Certainly, the distance alone between Appellee's residence in Phoenix, Arizona, and Pennsylvania, was an obstacle for Appellee to overcome. In addition, Appellee's financial status also made it more difficult for him to search for K.A.M. and his daughter, and to obtain legal assistance.[2]
It is true that if the failure to perform parental duties is the result of obstructive tactics, such failure is excused. In re Adoption of Orwick, 464 Pa. 549, 555, 347 A.2d 677, 681 (1975); *306 Baby Boy H., 401 Pa.Super. at 534-535, 585 A.2d at 1056. However, to obtain the benefit to that excuse, "a parent must exhibit reasonable firmness in attempting to overcome the obstructive behavior." Baby Boy H., at 534-535, 585 A.2d at 1056. Thus, while those obstructive factors noted by Appellee certainly weigh in his favor, Appellee cannot avail himself of that excuse for the following reasons. It is undisputed that Appellee had the means to assert his parental rights in June of 1989, and failed to do so in even the smallest of ways until March 21, 1990. In June of 1989, Appellee was presented with a letter from Appellants' attorney. Upon the letter was the attorney's phone number and mailing address. The only effort to contact Appellants or their counsel via the information on this letter was made by Appellee's sister, Ronnette Newsome, who telephoned Appellants' counsel about the adoption in July of 1989. Appellee submits that his sister then lost the letter. However, he has offered no explanation why he never attempted to contact the attorney during the time period which he admittedly possessed the information. Moreover, loss of the letter does not explain why, after Ms. Newsome gave him Appellants' telephone number in September or October of 1989, Appellee once again failed to contact Appellants. It is clear to this Court that Appellee failed to act promptly when advised of his child's birth. The barriers were not so great as to prevent Appellee from at least showing concern for his child by inquiring about her well-being.
In fact, Appellee did not contact Appellants until March 21, 1990, and then only after Appellants called another of Appellee's sisters, Kimberly Barnes, and requested that Ms. Barnes ask Appellee to call them. Certainly, his inattentiveness does not "affirmatively demonstrate love, protection and concern" for his child, and Appellee obviously did not "exert himself to take and maintain a place of importance in his child's life." Baby Boy A., 512 Pa. at 521-523, 517 A.2d at 1246. Rather, the record demonstrates that Appellee made little, if any, effort to locate or inquire about his daughter.
Our review of the record reveals that Appellee did not take an active role in attempting to form a parental relationship *307 with his child. He simply did not "exhibit reasonable firmness in attempting to overcome the obstructive behavior." Baby Boy H., 401 Pa.Super. at 534-535, 585 A.2d at 1056. Accordingly, we find that Appellee has not explained away his failure to assert his parental rights during the six-month statutory period. In so ruling, we recognize that Appellee faced obstacles which made it difficult for him to perform his parental duties. However, we find that Appellee personally made only a cursory effort to assume his parental position, i.e., one telephone call. In fact, those few steps that were taken towards finding his daughter were taken by his family, not Appellee.[3] Had Appellee shown even the slightest interest in assuming his parental duties, i.e., timely inquiries about his child, the result herein might be different. We note that this is not a case where the mother of the child and others acted in such an obstructive manner that their actions negated the father's failure to perform his parental duties. Instantly, Appellee could have inquired about his child and demonstrated concern for his child but failed to do so. Compare, Baby Boy H., at 534-535, 585 A.2d at 1056-1057 (father showed reasonable firmness in asserting parental rights in face of severe obstructive tactics of mother and social service agency).
Third, we must evaluate any "post-abandonment" contact between Appellee and his child. In other words, we must review those attempts made by Appellee to re-establish his parental rights after the expiration of the six-month period. Adoption of Hamilton, 379 Pa.Super. at 280-281, 549 A.2d at 1294. On March 21, 1990, well after the six-month period had expired, Appellee contacted Appellants concerning his child. During that conversation, Appellants informed Appellee that all further communications about his child should be referred to their attorney. Thereafter, Appellee and his family sent *308 three packages of presents to the child on July 19, 1990, July 20, 1990, and December 4, 1990. Appellee also travelled across the nation to attend the involuntary termination proceeding on October 1, 1991. Significantly, between the last package he sent on December 4, 1990 and the hearing on October 1, 1991, Appellee has not attempted to contact or inquire about his child in any manner, nor has he offered any support, financial or otherwise.
Upon review, we cannot say that Appellee's actions since March of 1990, rehabilitated his failure to perform parental duties. Three packages which were sent on the advice of counsel and one phone conversation with Appellants do not demonstrate an affirmative desire to assume a primary position in his daughter's life. Further, merely preparing for and attending the involuntary termination proceeding does not vitiate his apparent lack of concern, especially when we consider that Appellee made no effort to contact his child or inquire about her after he sent the last package on December 4, 1990. See, In re Adoption of Y.S., 487 Pa. 99, 408 A.2d 1373 (1979) (termination order affirmed where parents did little more than prepare for hearing). Compare, Adoption of Stunkard, 380 Pa.Super. 107, 114-115, 551 A.2d 253, 257 (1988) (termination denied where father not only prepared for hearing but actively sought to assert his parental rights).
We certainly understand that distance and the lack of financial resources severely limit those actions which Appellee could take. However, a father cannot protect his parental rights by merely stating that he does not wish to have his parental rights terminated. A parent has an affirmative obligation to act in his child's best interest. As we stated in Adoption of Hamilton, 379 Pa.Super. at 274, 549 A.2d at 1291,
To be legally significant the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role.
*309 Instantly, Appellee's actions do not demonstrate a "willingness and capacity" to assume his parental duties. "[M]ere renewal of interest and expression of desire for the return of a discarded child do not negate the abandonment. . . ." Baby Boy A., 512 Pa. at 523-524, 517 A.2d at 1247, quoting In re In the Matter of J.F., 487 Pa. 115, 124-125, 408 A.2d 1382, 1387 (1979). Although we recognize that Appellee has not "abandoned" his child in the traditional sense, he has legally abandoned his daughter by failing at least to attempt to establish a parental bond.
Finally, we must determine whether termination of Appellee's parental rights will clearly serve to satisfy the needs and promote the welfare of this child. 23 Pa.C.S.A. § 2511(b); Adoption of Hamilton, 379 Pa.Super. at 280-283, 549 A.2d at 1294, 1295. We conclude that termination is in the child's best interest. Appellant Barbara Hutchins is the Director of Children's Ministries at Bethesda Mission, and, at the time of the hearing, her husband was a divinity student who anticipated graduating from the seminary in May of 1992. He also was a part-time employee of Bethesda Mission. Appellee's daughter has resided with Appellants since she was three weeks old and for a period of more than three and one-half years. Since residing with Appellants, the child has grown into a "very bright, very healthy little girl." N.T., p. 23. Appellants are providing for her needs and desire to continue in their parental capacity. Further, K.A.M. desires Appellants to adopt her child. On the other hand, Appellee is currently residing with his paramour and their two children. He admits that he would have a difficult time financially supporting his paramour and three children. His mother testified that she and her husband are willing to help raise the children. Appellee does not have a high school diploma and, at the time of the hearing, was on probation for accessory to auto theft.
We find that the best interests of the child sub judice would be served by the termination of Appellee's rights, thus, paving the way for Appellants' adoption of the child. The child would continue to enjoy the stability and love offered by Appellants, *310 the only parents she has ever known, in the only home she has ever known. We note that Appellee's parental rights are not being terminated solely because his economic and educational situation is not as favorable as Appellants'. See 23 Pa.C.S.A. § 2511(b). Rather, it is based upon Appellee's disregard for his parental duties coupled with Appellants' ability to better serve the need and insure the welfare of the child. There is simply no evidence to suggest that this child's "best interest" would be promoted by preserving Appellee's parental status. Cf., Baby Boy A., supra; Adoption of David C., supra.
In sum, we rule that the trial court erred when it determined that Appellee had not "refused or failed to perform parental duties" for at least six months. In so ruling, we find that there was insufficient evidence upon which the lower court could base its decision to sustain Appellee's parental rights. See Adoption of M.A.R., 405 Pa.Super. at 134-135, 591 A.2d at 1135 (standard of review). The fact that there were obstacles (many of which were erected by Appellee) for Appellee to overcome does not excuse his woeful lack of effort to assert his rights. As we have previously stated, a parent has an affirmative obligation to fulfill his or her parental duties. Simply refusing to relinquish one's parental rights is not tantamount to demonstrating love, protection and concern for one's child. Having considered the totality of the circumstances, we find that Appellants presented clear and convincing evidence that Appellee's parental rights should be terminated.
Final Decree is reversed. Case remanded for entry of an order involuntarily terminating Appellee's parental rights.
HUDOCK, J. files a dissenting statement.
HUDOCK, Judge, dissenting:
I respectfully dissent. I disagree with the majority's conclusion that Appellee could have overcome the obstructive barriers to perform his parental duties to E.S.M. The majority accepts the Appellants' argument that Appellee contributed to these barriers by not contacting Appellants, E.S.M., or *311 their attorney when he had access to information as to their whereabouts for a period in excess of six months. The majority rests this conclusion on Appellants' version of the incidents. Specifically, the majority concentrates on the fact that Appellee was given a letter by the natural mother, which contained the address of Appellants' attorney in June, 1989, and that Appellee then did not make any effort to contact the attorney nor the adoptor parents until March 21, 1990. Although the majority concedes that Appellee subsequently gave the letter to his sister, Ms. Ronnette Newsome, who eventually lost the letter, the majority finds that Appellee has offered no explanation for his failure to attempt contact during the time period in which he possessed the information. Moreover, the majority questions Appellee's concern for the child in that he again failed to contact Appellants after receiving their telephone number from Ms. Newsome in September or October, 1989. Ms. Newsome, after reading the papers received by her brother, had contacted Appellants' attorney in July, 1989. She was then contacted by Appellants and given their telephone number which she was to give to Appellee. The majority thus concludes that the barriers were not so great as to prevent Appellee from at least showing concern for his child by inquiring about her well-being. The majority, however, in reaching this determination, has replaced the trial court's findings of fact with their own. The trial court found that it was unclear as to when Appellee actually obtained Appellants' telephone number. The only testimony as to when the telephone number was given to Appellee was by Appellee himself. He testified, on direct examination, that he did not receive the telephone number until two or three months after his sisters had been telephoned by Appellants.[1] (N.T. at p. 44). Appellee, however, testified on cross-examination that he had received Appellants' telephone number approximately one year and three or four months prior to the hearing on the involuntary termination petition held October 1, 1991. (N.T. at p. 60). *312 Although Appellee's testimony differs as to the time of receiving the Appellants' telephone number, the trial court found that Appellee did not have sufficient knowledge as to where to contact his child until March, 1990, nor his former girlfriend until one month before the hearing. Likewise, the trial court found Appellee's explanation for failing to contact Appellants' attorney, subsequent to receiving the initial letter of adoption in June, 1989, credible. Appellee explained that there was so much confusion at that time, and he did not see the address of the attorney on the papers. (N.T. at p. 48). Furthermore, Appellee testified that he did not know what to do with the papers, and that he did not have any help or counseling on the matter. (N.T. at pp. 48, 59). This is precisely why Appellee had taken the papers to his sister's home, where they were later misplaced. The trial court reasonably found Appellee to have been bewildered by this information. (Trial Court Opinion at p. 5).
Appellate courts are bound by the findings of the trial court, which have adequate support in the record, so long as the findings do not evince capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence, In re J.W., 396 Pa.Super. 379, 386-388, 578 A.2d 952, 956-57 (1990). I find, after a careful review of the record, the trial court's assessment of the evidence, in this instance, was not in error. Moreover, Appellants, as the parties petitioning for the termination of the natural father's parental rights, have the burden of establishing grounds for involuntary termination by clear and convincing evidence. Our Supreme Court has explained the standard as follows:
[t]he standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.
Matter of Sylvester, 521 Pa. 300, 304, 555 A.2d 1202, 1203-04 (1989); In re J.W., supra, 396 Pa.Super. at 388-389, 578 A.2d at 957. Accordingly, because there remains a doubt as to the *313 actual date when Appellee received Appellants' telephone number, Appellants have failed to prove beyond clear and convincing evidence that Appellee has neglected or failed to perform his parental duties in light of insurmountable barriers. I would therefore affirm the Decree of the trial court denying Appellants' petition to involuntarily terminate Appellee's parental rights.
NOTES
[1] Appellee also claims another gift was sent to E.S.M. However, it did not reach its destination.
[2] Appellee's assertion of his legal rights was hampered when his Arizona counsel was disbarred. However, we note that Appellee did not seek legal assistance until sometime between March 20, 1990, and March 28, 1990, at least nine months after being informed of the birth of his daughter. Further, he sought legal assistance only after his parents received a letter from Appellants' counsel once again reiterating their desire to adopt the child and informing Appellee of their intent to have his parental rights terminated. N.T., pp. 49-51.
[3] We note that Appellee was aware that K.A.M. had a cousin who resided in the Phoenix area and that the cousin might know of K.A.M.'s whereabouts. After his meeting with K.A.M. in June of 1989, Appellee and his mother made one visit to the cousin's residence and, finding no one home, left, never to return. Appellee's failure to pursue this lead is demonstrative of his nearly total lack of effort to locate K.A.M. and his child.
[1] It is clear that Appellee was uncertain as to the precise date he received Appellants' telephone number, as only Ms. Newsome had been contacted in July, 1989. Appellee's other sister, Ms. Kimberly Barnes, had not been contacted by Appellants until March, 1990.