J-A07007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.J.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1493 MDA 2024 |

Appeal from the Decree Entered October 7, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 028-ADOPT-2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.L.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.D.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1494 MDA 2024 |

Appeal from the Decree Entered October 7, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 029-ADOPT-2024

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 13, 2025**

J.D.M. ("Father") appeals the decrees entered on October 7, 2024, which granted the petitions filed by C.E.F. ("Mother") and S.F. ("Stepfather") (collectively "Appellees") and involuntarily terminated Father's parental rights to his son, C.J.M., born in March 2015, and daughter, M.L.M., born in November 2017.  We affirm.

We gather the pertinent factual and procedural background of this matter from the certified record. The relationship between Mother and Father began in July 2012 and they married approximately four years later. *See* N.T., 9/9/24, at 7. Mother reported that they separated in April 2020 due to verbal and physical abuse perpetrated against Mother by Father, as well as her concerns regarding his abuse of narcotics and "violent outbursts," which culminated in an incident wherein Father menaced Mother with a hammer while holding M.L.M. *Id*. at 8-9. At the time of their separation, Mother, Father, and the two children resided in Swedesboro, New Jersey. *Id*. at 10-11; *see also* Appellees' Exhibit A.

Mother sought a temporary restraining order under New Jersey law, which we gather is the rough equivalent of a protection from abuse order under Pennsylvania law. *See* N.T., 9/9/24, at 11-12. Mother simultaneously filed for divorce. *Id*. at 18. On May 1, 2020, the New Jersey court entered a final restraining order that prohibited Father from having "any oral, written, personal, electronic" or other form of communication with Mother and awarded her temporary primary custody of C.J.M. and M.L.M.[1] *See* Appellees' Exhibit

---

[1] Notably, final restraining orders under New Jersey law do not expire. Rather, they will be terminated only upon motion of the parties. *See I.J. v. I.S.*, 744 A.2d 1246, 1250 (N.J.Super. 1999) ("If the plaintiff makes no application to dismiss the restraining order and the plaintiff is awarded a final restraining order, the order is effective indefinitely, unless the court modifies or dismisses the restraining order at the plaintiff or the defendant's request."). There is no
*(Footnote Continued Next Page)*

A. Around this time, Mother and the children relocated to Cumberland County, Pennsylvania, which is where Mother's parents and extended family reside. *See* N.T., 9/9/24, at 17.

Pursuant to the terms of the final restraining order, Father was awarded partial physical custody of the children every Monday at 3:00 p.m. until Thursday at 6:30 p.m., with maternal grandparents facilitating communication and providing transportation. *See* Appellees' Exhibit A. Although Father initially exercised his full custody entitlement, he quickly started returning the children to Mother's custody earlier each subsequent week. *See* N.T., 9/9/24, at 17, 124. In August 2020, Mother resumed living in Swedesboro with the children after she was granted sole possession of the marital home. *Id*. at 22. Father began living in an apartment. The same month, Father ceased exercising his custodial time after Mother raised concerns that Father's new residence was unsuitable and that he did not have age-appropriate car seats. *Id*. at 17, 91; *see also* Father's Exhibit 5.

Ultimately, the divorce was finalized under New Jersey law on November 4, 2020. *See* Appellees' Exhibit B. The final divorce judgment, *inter alia*, granted Mother sole legal and primary physical custody, while awarding Father partial physical custody every Friday at 6:00 p.m. until Sunday at 6:00 p.m.

_____

indication in the certified record that Mother or Father ever petitioned the court in New Jersey to lift the final restraining order.

*Id*. The judgment, however, "immediately suspended" Father's custodial time until he complied with the following requirements:

(i)     [Father] must provide his full address and contact phone number to [Mother's] attorney and confirm he has suitable living arrangements for the children, including a separate bedroom for each child;

(ii) [Father] shall provide proof to [Mother's] attorney that he completed a substance abuse evaluation, including a clean drug screen;

(iii) [Father] shall provide proof to [Mother's] attorney that he completed an anger management course consistent with the requirements of the final restraining order in this matter; and

(iv) [Father] shall provide proof to [Mother's] attorney that he has age[-]appropriate car seats for [the children].

*Id*. at ¶ 2(i)-(iv) (some capitalization altered). It provided that "[i]f [Father] satisfies all of the above requirements, [Father's] parenting time may be reinstated." *Id*. at ¶ 3. Father never complied with these obligations and, thus, his New Jersey custody award remained suspended at the time of the subject hearing. *See* N.T., 9/9/24, at 20-22.

The divorce judgment also required all communications between Mother and Father to take place through the messaging software AppClose. *See* Appellees' Exhibit B at ¶ 5. Finally, it granted Mother permission to relocate with the children back to Cumberland County permanently. *Id*. at ¶ 6; *see also* N.T., 9/9/24, at 22-23. Mother thus returned to Pennsylvania and sold the marital home in December 2020. *See* N.T., 9/9/24, at 22-23.

Contemporaneously, Appellees began dating in August 2020 and married in September 2022. *Id*. at 6, 36-37. Stepfather had three daughters from a prior relationship, who became the children's stepsisters. *Id*. at 6. Also during this period, Father's in-person contact with the children ended. His last face-to-face meeting occurred in November 2020 when he appeared unannounced at the children's daycare and briefly interacted with them. *Id*. at 17, 27. Although Father contacted the children on a cell phone belonging to C.J.M. a handful of times between November 2020 and March 2021, those communications stopped when the number Father knew to be associated with that phone abruptly changed. *Id*. at 26, 97-99.

Father has a well-documented history of substance abuse and related criminal behavior, including possession of controlled substances, robbery, and retail theft. *See generally* Appellees' Exhibits C-S. He claimed to have suffered a "mental breakdown" in March 2021 and was homeless for more than two years. *See* N.T., 9/9/24, at 70, 135. During this time, Father admitted that he was regularly abusing narcotics. *Id*. Beginning in July 2023, he started living in "transitional housing" connected with a "drug treatment facility" in Philadelphia, Pennsylvania. *Id*. at 69-71, 142.

In August 2023, Mother transferred the child support proceedings from New Jersey to Pennsylvania. *Id*. at 34. Thereafter, Father filed requests for modification of the child support order under Pennsylvania law on two separate occasions. *Id*. at 34-36. However, he never sought custody of the

children under either New Jersey or Pennsylvania law. *Id*. at 33. In April 2024, Father tried to file a document in the Office of the Prothonotary of Cumberland County, but it was rejected on April 15, 2024, for a variety of issues related to incorrect fees, certificates of compliance, and Father's purported *in forma pauperis* status. **See** Father's Exhibit 6. Father maintains that this returned filing was a failed attempt on his part to file a custody complaint concerning the children. **See** N.T., 9/9/24, at 103-04. The purported filing is not present in the certified record.

On March 28, 2024, Father text messaged Mother for the first time in almost four years. The communication provided his cell phone number and requested that she facilitate the children calling him. *Id*. at 101-02. He texted her with a similar request on April 26, 2024. *Id*. at 102. Mother did not respond to either solicitation but alerted the Hampden Township Police Department that Father was contacting her in violation of the New Jersey final restraining order. *Id*. at 29-30, 105. Thereafter, a representative of the department contacted Father and cautioned him to only contact Mother through AppClose. *Id*. On June 14, 2024, Father began using AppClose for the first time and attempted to contact Mother through that medium. *Id*. at 106-07; Father's Exhibits 1-3. Mother did not respond.

Meanwhile, on April 29, 2024, three days after Father's second text message, Appellees filed petitions requesting that Father's parental rights to C.J.M. and M.L.M. be involuntarily terminated pursuant to 23 Pa.C.S.

§ 2511(a)(1), (2), and (b). Father received notice of the filing of the termination petitions near the end of April 2024. **See** N.T., 9/9/24, at 103-04.

The orphans' court held a consolidated hearing on September 9, 2024, at which point in time C.J.M. and M.L.M. were nine years old and six years old, respectively.[2] Appellees testified to the foregoing. Father was present, represented by counsel, and testified on his own behalf. He also adduced testimony from his girlfriend and several immediate family members. After taking the matter under advisement, the orphans' court entered decrees that granted Appellees' petitions and involuntarily terminated Father's parental rights as to C.J.M. and M.L.M. Father filed timely notices of appeal along with concise statements of errors pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3] The orphans' court authored an apt Rule 1925(a)(2)(ii) opinion explaining its reasoning.

In his brief, Father challenges the sufficiency of the evidence supporting the findings of the orphans' court pursuant to § 2511(a)(1) and (2):

1. Whether the court erred as a matter of law and abused its discretion in finding that Father's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(1) when sufficient evidence was not provided at the hearing that Father had

---

[2] The orphans' court appointed Theresa Weaver-Barbers, Esquire, to serve as legal counsel for both C.J.M. and M.L.M., pursuant to 23 Pa.C.S. § 2313(a).

[3] We consolidated these appeals *sua sponte* pursuant to Pa.R.A.P. 513 due to the closely related nature of the underlying parties and issues.

engaged in a settled purpose of relinquishing his parental claim to the child[ren] pursuant to 23 Pa.C.S. § 2511(a)(1)?

2. Whether the court erred as a matter of law and abused its discretion in finding that Father's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(1) as sufficient evidence was not presented that Father refused or failed to perform parental duties pursuant to 23 Pa.C.S. § 2511(a)(1)?

3. Whether the court erred as a matter of law and abused its discretion in finding that Father's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(2) as sufficient evidence was not presented that Father cannot or will not be able to remedy the conditions and causes of incapacity, abuse, neglect, or refusal to provide parental care or subsistence for the children's physical and mental well-being?

Father's brief at 4 (some capitalization altered).

Our standard and scope of review over such questions is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions

- 8 -

concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by § 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id*. at 830; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to § 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the determination of the orphans' court as to any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm an involuntary termination decree.[4] *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We focus our review upon § 2511(a)(1), which provides as follows:

_____

[4] Since Father does not challenge the court's findings as to § 2511(b), we will not address that prong. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa.Super. 2017) (holding that litigant waived all claims concerning specific

*(Footnote Continued Next Page)*

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. **With respect to any petition filed pursuant to subsection (a)(1)** . . . **the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.**

23 Pa.C.S. § 2511 (emphasis added).

A petitioner seeking termination pursuant to § 2511(a)(1), must "produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child **or** a refusal or failure to perform parental duties." ***In re Adoption of C.P.D.***, 324 A.3d 11, 26

---

subsections of § 2511 by not including the issue in the Rule 1925(b) statement and not developing any argument in the brief). Rather, we will consider that subsection only insofar as it affects our § 2511(a) analysis.

(Pa.Super. 2024) (emphasis added; cleaned up). Our Supreme Court has offered additional authoritative guidance on this particular inquiry:

> Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance[,] and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021) (cleaned up).

As noted in the statutory text, our General Assembly has mandated an emphasis upon "the six months immediately preceding the filing of the termination petition" as the "most critical period for evaluation." *Id*. Our Supreme Court, however, has cautioned that courts should "avoid a mechanical application of the law regarding the termination of parental rights." *Id*. at 593. Thus, the court's review should encompass the "whole history of a given case." *In re Adoption of C.M.*, 255 A.3d 343, 364 (Pa. 2021).

Further, a court's assessment of § 2511(a)(1) "must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of parental rights." *In re Adoption of L.A.K.*, 265 A.3d at 593. This includes consideration of, *inter*

- 11 -

*alia*, (1) the explanation for the parent's conduct; (2) post-abandonment contact between the parent and child, if any, including any efforts made by the parent to re-establish connection; and (3) the effect that termination of parental rights would have on the child pursuant to § 2511(b). **Id**.

Father argues that the orphans' court erred in concluding that termination was warranted pursuant to § 2511(a)(1) due to the efforts he expended by contacting Mother between March and April of 2024, as well as his unsuccessful attempt to file an alleged custody complaint around that same time. **See** Father's brief at 17-27. He avers that the court placed too much emphasis on his three years of inaction between March 2021 and March 2024, instead of focusing on the six months prior to the filing of the petitions. **Id**. at 26.

According to Father, his failure to maintain contact with the children was the result of Mother's obstructive tactics, including her failure to respond to his text messages in the spring of 2024. **Id**. at 22 ("When a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and his or her child, it is not held against the parent that they did not perform their parental duties.") (citing **In re E.S.M.**, 622 A.2d 388, 393 (Pa.Super. 1993)). Moreover, he analogizes the facts of his case to those presented in **In re Adoption of C.M. See** Father's brief at 23-25. In Father's view, his attempts to contact the children through Mother two times

in the spring of 2024, along with his failed endeavor to initiate custody proceedings in April of that year, were comparable to the appellant's actions in that case of calling the mother in 2016, 2017, and 2019, and initiating legal action for custody before the filing of the termination petition. *Id*. at 24.

In its opinion, the orphans' court acknowledged Father's belated attempts to reconnect with C.J.M. and M.L.M. but reasoned that termination was "nevertheless appropriate" pursuant to § 2511(a)(1). *See* Orphans' Court Opinion, 11/5/24, at 10. Pointedly, it found that Father's three years of inaction immediately preceding that renewed effort "clearly evidence[d] both a settled purpose of relinquishing parental rights as well as a failure to perform parental duties." *Id*. The orphans' court also concluded that Father had not demonstrated sufficient fortitude in responding to the obstacles impeding his ability to provide parental care to the children, reasoning as follows:

> It is true that there were barriers placed between Father and the exercise of his parental rights. The primary obstacle was a New Jersey court order that suspended Father's custodial rights. A secondary obstacle was a restraining order that prevented him from contacting Mother. These barriers were not insurmountable. In suspending his rights, the New Jersey court set forth clear conditions that needed to be met before Father's rights could be reinstated. Father never attempted to regain his rights or eliminate the concerns of the New Jersey court. Father's restraining order also included a provision that permitted him to speak with Mother about the children via AppClose. Father never attempted to use the application and admitted to the court as such. Father showed no firmness in resisting the barriers placed in his path.
>
> Father's explanations regarding his lack of firmness were unreasonable. He blamed the courts, the judges, and the lawyers that were involved in the New Jersey restraining order and custody

order. He blamed Mother for following the court orders and essentially argued that she could have ignored them. He testified that he never attempted to use AppClose because he is not savvy enough to understand it. Father had over three years to address the concerns of the New Jersey court. He had over three years to learn how to use AppClose. Father's explanations were not credible[.]

*Id*. at 10-11 (cleaned up).

The orphans' court also noted that Father's efforts to re-establish contact with the children between March 2024 and April 2024 were inherently problematic. Specifically, "Father's initial attempts at communication were via a method that was likely in violation of [the final] restraining order against him." *Id*. at 11. Furthermore, the court observed that Father did not attempt to reach out to Mother through AppClose until after he received notice of the filing of the termination petition. *Id*. Finally, it found that Father's failed attempt to file a petition for custody in April 2024 was simply "another obstacle within Father's path that he offered no resistance to." *Id*.

Our review of the certified record fully supports the orphans' court's findings. The respective testimonies of Mother and Father reveal there is no dispute that Father fell out of touch with C.J.M. and M.L.M. beginning in March 2021 and took no affirmative action to maintain contact with them, or provide parental care, until March 2024, one month before the termination petitions were filed. *See* N.T., 9/9/24, at 17, 26-27, 99, 101-02, 106-07. At that time, Father texted Mother on March 28, 2024, and April 26, 2024, in violation of the New Jersey court orders. *Id*. at 101-02; *see also* Appellees' Exhibits A-

- 14 -

B. Furthermore, the court was precluded from considering Father's use of AppClose in June 2024 since those efforts occurred **after** notice of the filing of the termination petition had already been given. **See** 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to [§] (a)(1) . . . , the court shall **not** consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." (emphasis added)).

Viewed properly, the only relevant action that Father undertook was to send two text messages to Mother asking to speak with the children within the last month before the termination petitions were filed. Thus, the record evidence supports the finding of the orphans' court that Father's delayed efforts paled in comparison to the preceding three years of his absence and silence. Considering the whole history of the case, we find no abuse of discretion or error of law in the court's determination that Father, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, refused or failed to perform parental duties for C.J.M. and M.L.M. **See** 23 Pa.C.S. § 2511(a)(1). Even affording due credit to Father's limited and belated bids to re-establish contact with the children, the record nonetheless supports the court's conclusion that Father failed to discharge any parental duties on behalf of the children during the relevant timeframe.

We also find ample evidence supporting the court's related conclusion that Father failed to demonstrate sufficient fortitude with respect to the

obstacles that stood in the way of his relationship with the children. Specifically, Father testified that his absence from their lives between March 2021 and July 2023 was due to the mental breakdown that he suffered, which led to a protracted period of homelessness and substance abuse. **See** N.T., 9/9/24, at 69-71, 135, 142. Thereafter, he averred that he began participating in a drug treatment program that provided him with transitional housing. **Id**. Despite achieving alleged stability through this program in July 2023, Father took no action to contact either child until eight months later in March 2024.

Additionally, Father never successfully attempted to legally secure his custody rights in Pennsylvania or New Jersey. His abandoned attempt at filing a custody complaint in Pennsylvania is particularly demonstrative of his lack of resolve. In his testimony, Father conceded that he never attempted to fix the procedural issues that precluded him from formally requesting custody under Pennsylvania law. **See** Father's Exhibit 6; **see also** N.T., 9/9/24, at 103-04. Along similar lines, Father also failed to complete the modest requirements set forth in the New Jersey divorce judgment. **See** Appellees' Exhibit B at ¶ 2(i)-(iv) (indicating that Father could have had immediate custody rights by providing contact information, confirming the suitability of his living arrangements, and completing anger management treatment and a substance abuse assessment). We observe no abuse of discretion or error of law in the court's finding as to Father's lack of fortitude.

Moreover, even assuming *arguendo* that Mother's failure to respond to Father's improper text messages during the last month before the petition was filed constituted obstructive behavior, it is undisputed that Father took no recognizable effort to overcome this eleventh-hour hurdle. We have explained that when "the failure to perform parental duties is the result of obstructive tactics, such failure is excused. **However, to obtain the benefit to that excuse, a parent must exhibit reasonable firmness in attempting to overcome the obstructive behavior**." ***E.S.M.***, 622 A.2d at 393 (emphasis added). Based on the foregoing evidence of Father's actions, it is plain that he is not entitled to the benefit of the case law concerning obstructive behavior.

Finally, we address Father's argument that his case is analogous to ***In re Adoption of C.M.***, and therefore requires reversal. In that case, the Supreme Court addressed the sufficiency of the evidence with respect to § 2511(a)(1) in the context of a termination petition also filed by one biological parent against another. The father participated in semi-regular visitations with his child between January 2016 and October 2016, after which time the visits ceased once the mother stopped communicating with the father. ***In re Adoption of C.M.***, 255 A.3d at 348. Thereafter, the father unsuccessfully attempted to contact the mother by cell phone in December 2016, November 2017, and February 2019. ***Id***. Based upon the mother's refusal to respond to the father's communications, he filed a custody

complaint in February 2019 and actively participated in those proceedings for approximately two months. *Id*. at 349. Thereafter, the mother filed a petition seeking involuntary termination of his parental rights. *Id*.

The orphans' court in that case granted the mother's petition based upon the undisputed fact that the father had no contact with his child between October 2016 and April 2019. *Id*. at 351-52. On appeal, this Court vacated the termination decree based upon non-evidentiary considerations. *Id*. at 353-54. Our High Court granted discretionary review and elected to address the father's claims concerning the sufficiency of the evidence. *Id*. at 363. Ultimately, our Supreme Court found that the evidentiary record did not support the termination decree. Specifically, it found that the mother's "settled resistance" over several years, coupled with father's "proactive participation" in the aforementioned custody proceedings, demonstrated "affirmative performance" of the father's parental duties "to the maximum extent apparent at the time under these circumstances[.]" *Id*. at 368. Thus, it vacated the decree. *Id*. at 370.

Contrary to Father's arguments, we find *In re Adoption of C.M.* to be readily distinguishable from the instant case. We emphasize that Father's lack of contact with the children over several years was **not** the result of protracted interference perpetrated by Mother but the natural consequence of Father's mental breakdown, homelessness, struggles with substance abuse, and refusal to comply with the requirements of the New Jersey court orders. *See*

N.T., 9/9/24, at 17, 26-27, 99, 101-02, 106-07. Unlike the father in *In re Adoption of C.M.*, who continued to make efforts to contact his child over several years, Father took no action whatsoever for more than three years. Furthermore, while Mother declined to respond to Father's two text messages between March and April 2024, the terms of the existing New Jersey court orders exempted her from the obligation to communicate with Father outside of AppClose. Perhaps most critically, and unlike the parent in *In re Adoption of C.M.*, Father has never successfully initiated or participated in custody proceedings with respect to C.J.M. and M.L.M. Accordingly, we do not find that *In re Adoption of C.M.* is apposite to our resolution of the instant controversy.

In sum, the record supports the conclusion of the orphans' court that adequate grounds for termination existed as to each child and, based upon the foregoing discussion, we discern no abuse of discretion or error of law in its holding that termination of Father's parental rights was warranted pursuant to § 2511(a)(1). Therefore, we affirm the decrees involuntarily terminating Father's parental rights as to C.J.M. and M.L.M.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/13/2025