J-A27018-24
J-A27019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 829 MDA 2024 |

Appeal from the Decree Entered May 21, 2024
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-9509

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.N., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 836 MDA 2024 |

Appeal from the Decree Entered May 21, 2024
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-9509

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: FEBRUARY 19, 2025**

In these matters, B.C. (Father) and N.N. (Mother) appeal the decrees that terminated their parental rights to their daughter, J.R.C. (the Child), pursuant to the Adoption Act.  ***See*** 23 Pa.C.S.A. § 2511(a)(1), (a)(8), and (b).[1]  Because each parent's appeal raises substantially the same issues and

---

[1] The orphans' court also changed the goal of the dependency proceedings; neither parent appealed the goal change.

involves the same facts and circumstances, we address the parents' appeals together in one decision.  After review, we affirm.

The orphans' court made the following factual findings:

The [Child] was born on February 4, 2022. . . .

It is unrebutted that the [Child] was placed in the custody of [Luzerne County] Children and Youth [Services] [(the Agency)] on March 8, 2022.  It is unrebutted that the [C]hild was born with illicit substances in her system and was placed in a neonatal intensive care unit (NICU) for an entire month at Thomas Jefferson Hospital in Philadelphia.  Both parents did not visit the [Child] while the [C]hild was in the hospital for a month.

Orphans' Court Opinion (O.C.O.), 7/10/24, at 3-4 (record citation omitted).

The Agency caseworker testified that the Child was placed in the Agency's custody due to the actions of both parents. Father had been noncompliant with the Agency in the dependency action of his other children,[2] and Mother left the Child in the hospital despite being offered placement in a drug and alcohol treatment facility where the Child would have been able to stay with her.  *See* N.T., 12/11/23, at 10; N.T., 1/29/24, at 8.  The Child was adjudicated dependent.  At the time of the termination hearing, the Child was in a kinship foster care placement, where she had lived for approximately a year and a half.  *See* N.T., 1/29/24, at 41.

---

[2] The record reveals that Mother and Father have two other children together, who both live with maternal grandmother.  Father also has an older child who lives with paternal grandmother.  None of those children is involved in this appeal.

- 2 -

The Agency developed a service plan for the family. Father's and Mother's recommended services included parenting education, drug and alcohol, and mental health services, and participating in the Color Call-In system. The Agency explained to both parents that they needed to complete the services to be reunified with the Child.

Father did not maintain substantial contact with the Agency throughout the Child's placement. N.T., 12/11/23, at 15-16. Father signed releases in December 2022, and the Agency made referrals for services, but Father did not follow through on those services. *Id.* at 15, 47. At the time of the hearing, the Agency caseworker testified that Father was not engaged in, and had not completed, any of the court-ordered services. *Id.* at 15, 20.

Father experienced addiction issues and periods of incarceration and rehabilitation throughout the life of the case. Father was actively using drugs from the Child's birth in February 2022 until he was incarcerated in February 2023. *Id.* at 45-46, 49. Father was released into an inpatient drug and alcohol treatment program from June to September 2023. *See id.* at 12, 25. After completing treatment, Father was sentenced on previous charges and reincarcerated. *See id.* at 30-31, 54-55. Father remained incarcerated at the time of the termination hearing. The Agency caseworker testified that she was not aware if Father's court-ordered services were available at his place of incarceration. *Id.* at 40.

Father did not visit the Child from the Child's birth in February 2022 until he requested visits through his counselor while in inpatient treatment; the

first visit occurred on June 30 or July 7, 2023. *See id.* at 12-13, 25-26, 53. His last visit occurred on September 5, 2023. Father did not visit with the Child at any time while he was incarcerated because he did not request visits. *Id.* at 32, 59-60. Father testified that he did not want the Child to have to visit at the jail. *Id.* at 59-60.

After the Child's placement in March 2022, Mother sporadically visited the Child, with the last visit occurring on September 9, 2022. *See* N.T., 1/29/24, at 11, 13. After that date, the Agency did not have any contact with Mother despite conducting diligent searches and attempting to reach Mother through her last known contact information. *Id.* at 12-13. Mother did not reach out to the Agency or try to have any visits with the Child after September 9, 2022, even though she knew where the Child was placed and had the phone number for the Child's foster parents. *See id.* at 15. Mother also never followed up with any of her recommended services. *Id.*

The Agency caseworker testified about the conduct of both parents during the six months before the Agency filed its termination petitions. Father and Mother did not provide any financial support, gifts, food, or clothing to the Child. N.T., 12/11/23, at 12-15; N.T., 1/29/24, at 11-12. Neither parent communicated with the Child in any manner nor contacted the Agency to inquire about the Child's well-being on a regular basis. N.T., 12/11/23, at 12-15; N.T., 1/29/24, at 11-12. Neither parent performed any parental duties. N.T., 12/11/23, at 12-15; N.T., 1/29/24, at 11-12. Father admitted that he did not attempt to make phone calls or visit the Child during this period. *See*

N.T., 12/11/23, at 72. Likewise, Mother testified that she did not have contact with the Child and did not reach out to the Agency during this period. **See** N.T., 1/29/24, at 23, 35-36.

The Agency petitioned to terminate Father's and Mother's rights on May 1, 2023 and filed an amended petition on May 30, 2023 to correct Mother's date of birth. The orphans' court held the termination hearing on December 11, 2023 and January 29, 2024. The court heard testimony from the Agency caseworker, Father, and Mother. On May 21, 2024, the court terminated Father's rights under Section 2511(a)(1), (a)(8), and (b) of the Adoption Act, and terminated Mother's rights under Section 2511(a)(1) and (b).

Father and Mother timely filed these appeals.[3,4] We will address Father's appeal first. Father presents the following three issues for our review:

---

[3] We note with displeasure that after filing their client's appeals, both Father's and Mother's counsel failed to comply with this Court's rules. Inexplicably, both attorneys failed to timely file the completed docketing statements and their appellate briefs, as required, even after this Court entered multiple orders directing them to do so. We note that Mother filed her brief late on September 12, 2024, and Father filed his brief late on September 16, 2024.

We remind and caution counsel that compliance with our rules is mandatory in all cases. Furthermore, repeated delays in the courts are unacceptable especially in Children's Fast Track cases. **See In re T.S.M.**, 71 A.3d 251, 261 n. 21 (Pa. 2013). The right to counsel in termination of parental rights cases is the right to effective assistance of counsel. **See In re J.T.**, 983 A.2d 771, 774 (Pa. Super. 2009) (citation omitted).

[4] The Child's Guardian *ad litem*/counsel failed to file a brief in this matter or notify us that she was joining the orphans' court's opinion or Father's or Mother's briefs. We surmise from her written recommendation to the orphans' court and the orphans' court's opinion that she believed termination was in
*(Footnote Continued Next Page)*

1. Whether the Trial Court abused its discretion, committed an error of law, and/or lacked sufficient evidence in determining the parental rights of [Father] to the [Child] should be terminated pursuant to 23 Pa. C.S.A. § 2511(a)(1).

2. Whether the Trial Court abused its discretion, committed an error of law, and/or lacked sufficient evidence in determining the parental rights of [Father] to the [Child] should be terminated pursuant to 23 Pa. C.S.A. § 2511(a)(8).

3. Whether the Trial Court abused its discretion, committed an error of law, and/or lacked sufficient evidence in determining the tenets of 23 Pa. C.S.A. § 2511(b)[5] have been satisfied and the best interests of the [Child] served by terminating the parental rights of [Father].

Father's Brief at 6.

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's

---

the Child's best interests. *See* Written Recommendation, 5/2/24, at 10 (unnumbered); O.C.O. at 28. We remind the Guardian *ad litem*/counsel that her duties to the Child extend through any appeals.

[5] We observe that Father's third issue raised in his Concise Statement of Matters Complained of on Appeal did not cite Section 2511(b). It instead cited Section 2511(a). The orphans' court treated this as a typographical error and addressed Section 2511(b) in its Appellate Rule 1925(a) opinion. Father's brief corrected this error as shown above and provided argument pertaining to Section 2511(b). Since this was an obvious error, our review was not impeded, and we decline to find waiver of this issue.

- 6 -

decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

- 7 -

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Father's rights under Section 2511(a)(1), (a)(8), and (b). As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(1). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Accordingly, termination under Section 2511(a)(1) is appropriate if Father has either evidenced a settled purpose of relinquishing his parental claim, or if Father has refused or failed to perform parental duties. Under

- 8 -

either event, Father's offending conduct must have been continuing for a period of at least six months immediately preceding the filing of the termination petition. *See id.*

Here, the initial and amended petitions were filed in May 2023, thus the statutory timeframe to examine Father's actions began in November 2022. We have clarified, however, that "[a]lthough the six-month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month provision." *In re I.J.*, 972 A.2d 5, 10 (Pa. Super. 2009) (citation omitted). "The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination." *Id.* (citing *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005)).

Regarding parental duties, we have explained that:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, . . . the parental obligation is a positive duty which requires affirmative performance.

*B.,N.M.*, 856 A.2d at 855 (citation omitted).

Furthermore,

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship

- 9 -

> to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*Id.* (internal citations omitted).

Once a settled purpose of relinquishing parental rights or a failure to perform parental duties is established, "the court must engage in three lines of inquiry: (1) the parent's explanation for [the parent's] conduct; (2) the post-abandonment contact between [the] parent and [the] child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *Charles E.D.M., II*, 708 A.2d at 92).

The orphans' court determined that the Agency had proven the statutory grounds for terminating Father's rights under Section 2511(a)(1). In its Appellate Rule 1925(a) opinion, the court extensively detailed the Agency caseworker's testimony related to Father's failure to have any contact with the Child or the Agency and his failure to perform parental duties in the six-month statutory period. The court found that "Father [has] refused or failed to perform [his] parental duties since the date of placement of [the Child] on March 8, 2022." O.C.O. at 12. Regarding Father's explanation for his lack of contact with the Child, the court stated:

The court questions why Father assumed that [the Agency caseworker] would know that he was incarcerated. Should Father have wished to see [the Child], he should have contacted [the Agency caseworker], and at least advised her of his incarceration even if it was not his intention to visit [the Child] while incarcerated. An explanation as to his lack of contact was needed. Based on Father's admission, he was "not in the right state" to see [the Child] and he did not want to have [the Child] see him in jail. This court notes that time is valuable and cannot be erased. Time does not stop running while a parent is working on their recovery while the child is in need of their care.

*Id.* at 15.

The court went on to conclude that for both Father and Mother:

The court does not find that Mother and Father demonstrated a continuing interest and genuine effort to maintain communication and association with the [C]hild. Mother and Father placed their own interests and feelings above the interests of the [C]hild by inaction, including not seeing the [C]hild for at least six (6) months prior to the filing of the petition to terminate their parental rights. Mother and Father were not prohibited from seeing the [C]hild. All they had to do was contact [the Agency] to arrange visits with the [C]hild or to ask about the [C]hild. Thus, based upon both Mother's and Father's own testimony and admissions, the court does not find any reasonable explanation for Mother's and Father's conduct.

*Id.* at 16.

On appeal, Father contests the court's termination under Section 2511(a)(1) by arguing that there was insufficient clear and convincing evidence to show that he purposely relinquished his parental claim or refused to perform parental duties. Father's Brief at 14-15. Father argues that for over three and a half months before the Agency filed its amended petition, he was incarcerated, detoxing, and taking his bipolar medication daily. *Id.* at

15. Father asserts there was no evidence that he was able to complete any services while incarcerated during that time, and there was no evidence that the Agency attempted to arrange visits between Father and the Child while Father was incarcerated. *Id.* Father also submits that he has now successfully completed a rehabilitation treatment program and began visits with the Child in the summer of 2023. *See id.* at 14. Overall, Father argues that the Agency's petition was premature. *Id.* at 15.

Father's argument fails to appreciate the standard of review we must apply to termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted). This is true even if the record could support an opposite result. *See id.*

Our review of the record supports the orphans' court's decision. From the Child's birth in February 2022 to June or July 2023, and specifically during the six-month statutory period at issue (November 2022 to May 2023), Father had no contact with the Child, nor did he perform any parental duties. *See* N.T., 12/11/23, at 12-15, 72. Father asserts that from February to May 2023, he was incarcerated, detoxing, and taking his bipolar medication daily. Father's Brief at 15. However, this does not negate the fact that Father did not initiate visits with the Child until June 2023.[6] *See* N.T., 12/11/23, at 12,

_____

[6] We observe that the orphans' court stated it would not consider any effort initiated by Father after May 30, 2023, when the Agency filed its amended
*(Footnote Continued Next Page)*

25-26, 50-53. At that point, he had not seen or had any contact with the Child since the Child was **born** in February 2022, well beyond the six-month statutory period required under Section 2511(a)(1). **See id.** at 12, 14. While

---

petition to terminate Father's parental rights. **See** O.C.O. at 10-11; 23 Pa.C.S.A. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), (6) or (8) the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."). However, the affidavit of service in the record indicates that the Agency served Father the petition by hand on June 30, 2023, and the testimony indicates that Father's first visit with the Child occurred on either June 30 or July 7, 2023. Thus, it is unclear: 1) if Father was aware of the petition prior to being served and 2) when Father initiated visits with the Child, but he may have initiated those visits before he received notice of the filing of the petition. Further, when considering the post-abandonment contact between Father and the Child, the orphans' court cited the Agency caseworker's testimony that "Father had no contact with the [C]hild from the [C]hild's birth in February of 2022 until June 30, 2023, subsequent to the filing of the amended petition . . . ." O.C.O. at 16. The court concluded "The credible and uncontradicted testimony given by [the Agency caseworker] confirms that there has not been any post-abandonment contact between . . . Father and the [Child]." **Id.**

Nevertheless, this does not alter our analysis, as having some visits with the Child between June and September 2023 is not significant enough to excuse Father's inaction during the most critical six-month period (November 2022 to May 2023). **See** 23 Pa.C.S.A. § 2511(a)(1); N.T., 12/11/23, at 12-15. **See also In re K.Z.S.**, 946 A.2d 753, 759 (Pa. Super. 2008) (explaining the rule that "To be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish [their] parental responsibilities bears the burden of proof on this question." (citation and emphasis omitted)); **In re E.S.M.**, 622 A.2d 388, 392 (Pa. Super. 1993) ("mere renewal of interest and expression of desire for the return of a discarded child do not negate the abandonment" (citation omitted)). Additionally, Father chose not to continue visits with the Child after September 5, 2023 when he was reincarcerated. **See** N.T., 12/11/23, at 12, 53, 59-60.

we acknowledge the efforts Father took in the summer of 2023 to overcome his addiction struggles and visit the Child, we agree with the orphans' court's astute observation that time is valuable and does not stop running while a parent is working on their recovery. *See* O.C.O. at 15. Further, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs." ***B.,N.M.***, 856 A.2d at 855. The record reflects that Father made **no** effort to perform parental duties for the Child during the statutory period, nor did Father provide any type of support for the Child.

We are also not persuaded by Father's other arguments related to his inability to complete services and the Agency failing to arrange visits while he was incarcerated. ***See*** Father's Brief at 15. Even if Father was unable to complete services from February to May 2023 while incarcerated, Father fails to explain why he could not complete services during the year after the Child's birth in February 2022 before he was incarcerated. Father signed releases in December 2022 and the Agency made referrals for services, but Father never followed through on those services. ***See*** N.T., 12/11/23, at 15.

Likewise, even if the Agency did not arrange visits while Father was incarcerated, Father failed to explain why he had no contact with the Child from the Child's birth in February 2022 to late June or early July 2023. Moreover, incarceration is not an excuse for Father's inaction. Father had a "positive duty" to "act affirmatively" and "utilize all available resources" to

perform his parental duties and preserve his relationship with the Child, even while incarcerated. ***B.,N.M.***, 856 A.2d at 855 (citations omitted). Further, the Agency caseworker testified that the Agency attempted to maintain contact with Father and that Father was never prohibited from visiting the Child. ***See*** N.T., 12/11/23, at 11-12, 15, 17.

The orphans' court specifically addressed Father's incarceration in its opinion. After acknowledging that incarceration alone cannot be grounds for involuntary termination, the court explained that the inquiry was whether Father had utilized all resources at his command while incarcerated to pursue a close relationship with the Child. ***See*** O.C.O. at 25 (citation omitted); ***see also B.,N.M.***, 856 A.2d at 855. The court determined that Father had not exerted himself whatsoever while incarcerated between February 2023 and when the amended termination petition was filed in May 2023. ***See*** O.C.O. at 26. Specifically, Father did not request to have any visits with the Child while incarcerated, and there was no evidence presented that he attempted to make any type of contact with the Child. ***See id.*** Therefore, it concluded Father did not utilize resources to maintain a place of importance in the Child's life. ***See id.***

In sum, Father's claim that the Agency's petition was premature lacks merit. We discern no error of law or abuse of discretion in the orphans' court's decision to terminate Father's rights under Section 2511(a)(1).

We turn next to Section 2511(b), the second part of the bifurcated analysis in termination of parental rights cases. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." ***In the Interest of K.T.***, 296 A.3d 1085, 1105 (Pa. 2023) (citations omitted); ***see also C.M.K.***, 203 A.3d at 261-62 (the focus of Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the 'primary consideration' must be the child's 'developmental, physical and emotional needs and welfare.'" ***K.T.***, 296 A.3d at 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." ***Id.*** at 1106 (citing ***T.S.M.***, 71 A.3d at 267). Recently, our Supreme Court held that this analysis also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have

a bond with their foster parents. *Id.* (citing *T.S.M.*, 71 A.3d at 268; *In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014)).

The orphans' court concluded that terminating Father's parental rights would best serve the Child's needs and welfare. The court credited the Agency caseworker's testimony which provided details about the Child's foster home. The caseworker testified that the foster family meets the Child's physical, developmental, and emotional needs. O.C.O. at 17. The foster parents also wish to adopt the Child and consider the Child to be a part of their family. *See id.*

The caseworker described the bond between the Child and the foster parents as a parent/child bond. *Id.* at 18. The caseworker observed a few visits between the Child and Father and did not believe there was a reciprocal bond between the Child and Father. *See id.*; N.T., 1/29/24, at 44. The caseworker believed that terminating Father's rights would have a positive impact on the Child because the Child would be provided with permanency. O.C.O. at 18. The court also noted that the Child's Guardian *ad Litem*/counsel recommended that it was in the Child's best interest to terminate Father's rights. *See id.* at 28.

On appeal, Father offers two main arguments. The first is that "the only reason for his lack of contact and parenting of the [Child] was his significant struggles with drug addiction and untreated mental health issues" which he has taken steps to alleviate. Father's Brief at 18. The second is that as his

visits with the Child progressed, Father and Child formed a close bond, and the Child's best interests would be better served by preserving Father's parental rights. *See id.*

Father's first argument fails because it focuses on Father's actions, not on the Child's needs and welfare. It is well established that Section 2511(b) is focused on the needs and welfare of the child. *See C.M.K.*, 203 A.3d at 261-62 (citation omitted). Father's assertion that he alleviated the struggles that caused him to not contact or parent the Child focuses on his conduct, not the needs and welfare of the Child. Thus, Father's first argument fails.

Father's second argument again fails to appreciate the standard of review we must apply in termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record, even if the record could support an opposite result. *See T.S.M.*, 71 A.3d at 267 (citations omitted).

Here, the record supports the orphans' court's findings. The caseworker testified regarding the bonds between the Child and Father and the Child and the foster parents. The caseworker did not believe there was a reciprocal bond between the Child and Father, whereas there was a parent/child bond between the Child and the foster parents. *See* N.T., 1/29/24, at 43-44. The foster parents also wish to adopt the Child. *Id.* at 42. The Guardian *ad Litem*/counsel recommended that termination would be in the Child's best interests. *See* O.C.O. at 28. Father also testified that he had a bond with

Child. N.T., 1/29/24, at 65. However, it was the orphans' court's purview to make credibility determinations and factual findings from the evidence presented, and we must accept those determinations and findings because they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citations and quotation marks omitted). We discern no error of law or abuse of discretion in the orphans' court's termination of Father's parental rights under Section 2511(b).

We now address Mother's appeal. Mother presents the following two issues for our review:

> 1. Whether the Trial Court abused its discretion and/or committed an error of law in determining the parental rights of [Mother] to the [Child] should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1).
>
> 2. Whether the Trial Court abused its discretion and/or committed an error of law in determining the tenets of 23 Pa.C.S.A. § 2511(b)[7] have been satisfied and the best interests of the [Child] served by terminating the parental rights of [Mother].

Mother's Brief at 6.

Instantly, the orphans' court terminated Mother's rights under Section 2511(a)(1) and (b). We begin with our analysis of Section 2511(a),

---

[7] We observe that Mother's second issue raised in her Concise Statement of Matters Complained of on Appeal contained the same error made by Father, as explained in Footnote 5. Mother did not cite Section 2511(b) and instead cited Section 2511(a). The orphans' court treated this as a typographical error and addressed Section 2511(b) in its Appellate Rule 1925(a) opinion. Mother's brief corrected this error as shown above and provided argument related to Section 2511(b). Since this was an obvious error, our review was not impeded, and we decline to find waiver of this issue.

incorporating our standard of review as described above in our analysis of Father's appeal. Termination of Mother's rights under Section 2511(a)(1) is appropriate if Mother has either evidenced a settled purpose of relinquishing her parental claim, or if Mother has refused or failed to perform parental duties. 23 Pa.C.S.A. § 2511(a)(1). In either event, Mother's offending conduct must have been continuing for a period of at least six months immediately preceding the filing of the termination petition. ***See id.***

Here, the relevant six-month statutory period under Section 2511(a)(1) is from November 2022 to May 2023, when the Agency filed the amended petition to terminate Mother's rights. Again, while this period is the most critical, the court must consider the whole case history and not mechanically apply the six-month provision. ***See I.J.***, 972 A.2d at 10 (citation omitted). "The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination." ***Id.*** (citation omitted).

The orphans' court determined that the Agency had proven the statutory grounds for terminating Mother's rights under Section 2511(a)(1). The court extensively detailed the Agency caseworker's testimony related to Mother's failure to have contact with the Child or perform parental duties in the six-month statutory period. The court found that "Mother [has] refused or failed to perform [her] parental duties since the date of placement of [the Child] on

March 8, 2022." O.C.O. at 12. Regarding Mother's explanation for her lack of contact with the Child, the orphans' court stated:

> This [c]ourt does not find Mother's explanation as to her lack of contact with the [C]hild to be reasonable and/or acceptable. The [c]ourt questions Mother's veracity as to her belief that she was not permitted to contact her [C]hild. Mother had supervised visits with the [C]hild. No one stopped Mother's visits with the child except Mother herself. Mother could have easily contacted [the Agency] and asked as to whether she might have continued the visits. This court notes that Mother's substance detox was quite extensive consisting of eight (8) months, in addition to her dental issues consisting of five (5) months [of] recovery. However, Mother moved away from the [C]hild. She sold her home and moved to another state.

*Id.* at 14.

The orphans' court determined that Mother, like Father, had not "demonstrated a continuing interest and genuine effort to maintain communication and association with the [C]hild," and instead "placed [her] own interests and feelings above the interests of the [C]hild by inaction, including not seeing the [C]hild for at least six (6) months prior to the filing of the petition." *Id.* at 16. The court reiterated that Mother was not prohibited from seeing the [C]hild and would have only needed to contact the Agency to arrange visits or ask about the Child. *Id.*

On appeal, Mother argues that the Agency failed to carry its burden of clear and convincing evidence. *See* Mother's Brief at 12-13. Mother cites her own testimony at the termination hearing to support her contention. For example, Mother argues that she had attended drug and alcohol treatment,

had visits with the Child, attempted to stay in touch with the Child, completed a parenting course through the Agency, is now employed, attends AA meetings, has familial support, and was four months sober at the hearing. *See id.* at 14-15.

However, Mother's argument, like Father's, fails to appreciate the standard of review we must apply to termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted). This is true even if the record could support an opposite result. *See id.*

Our review of the record supports the orphans' court's decision and refutes some of Mother's arguments. Although Mother asserts that she had visits with the Child, the Agency caseworker testified that Mother's last visit with the Child occurred in September 2022. *See* N.T., 1/29/24, at 11. Thus, in the six-month statutory period between November 2022 to May 2023, Mother had no visits with the Child. The Agency caseworker also testified that in that six-month period, Mother did not provide any financial support, food, clothing, or gifts to the Child or perform any parental duties for the Child. *See id.* at 11-12.

Additionally, although Mother claims that she attempted to stay in touch with the Child, the caseworker testified that Mother did not communicate with the Child or contact the Agency on a regular basis to inquire about the Child's well-being. *See id.* Mother also admitted to not reaching out to the Agency. *See id.* at 36. To the extent that Mother is asking us to give greater credit to

her claims and testimony than the Agency caseworker's testimony, we cannot do that. The orphans' court's factual findings and credibility determinations are supported by the record; thus, we must accept them. *See T.S.M.*, 71 A.3d at 267 (citation omitted).

Further, Mother asserts that she is now employed. However, at the termination hearing, Mother testified that, while she had a haircutting license, she **did not** have a job **at that time**. *See* N.T., 1/29/24, at 22 (emphasis added). Mother also now claims that she completed a parenting course through the Agency. Mother's Brief at 14. However, Mother testified at the hearing that she had completed a parenting course when involved with the Agency **before** this case; she did not testify that she had completed the course in connection with this case. *See* N.T., 1/26/24, at 22 (emphasis added). As for Mother's claims that she attended drug and alcohol treatment, attends AA meetings, has familial support, and was four months sober at the hearing, none of those claims negates the fact that Mother failed to perform **any** parental duties for the Child in the six-month statutory period. We have held that "the parental obligation is a positive duty which requires affirmative performance." *B.,N.M.*, 856 A.2d at 855 (citation omitted). The record supports that Mother has not affirmatively performed her parental obligation since at least September 2022 when she last visited with the Child, if not before that. Therefore, we find no error of law or abuse of discretion with the orphans' court's decision to termination Mother's rights under Section 2511(a)(1).

We turn next to Section 2511(b), the second part of the bifurcated analysis required in termination cases. We incorporate our standard of review under this section as discussed above in our analysis of Father's appeal. The orphans' court concluded that terminating Mother's parental rights would best serve the Child's needs and welfare. As discussed above, the court cited the Agency caseworker's testimony which provided details about the Child's foster home. The foster family meets all the Child's needs, wishes to adopt the Child, and considers the Child to be a part of their family. *See* O.C.O. at 17.

The caseworker described the bond between the Child and the foster parents as a parent/child bond. *Id.* at 18. The caseworker believed that there was no bond between the Child and Mother and that the Child would not recognize Mother; Mother had not had any contact with the Child since September 2022, when the Child would have been approximately seven months old. *See id.* The caseworker believed that terminating Mother's rights would have a positive impact on the Child because the Child would be provided with permanency. *Id.* The Guardian *ad Litem*/counsel also recommended that it was in the Child's best interest to terminate Mother's rights. *Id.* at 28.

On appeal, Mother argues that the Agency is "disingenuous in offering testimony as to a lack of bond between [Mother] and [the Child]." Mother's Brief at 16. Mother claims that she has taken every reasonable measure to preserve her relationship with the Child and the "testimony of all parties involved is that a bond remains." *Id.*

Not only does Mother's argument again fail to appreciate the standard of review we must apply in termination cases, but Mother's claims are belied by the record. Notably, Mother fails to cite evidence in the record to support her assertion that she took "every reasonable measure" to preserve her relationship with the Child and that the "testimony of all parties involved is that a bond remains." *Id.*; *see* Pa.R.A.P. 2119(c). Instead, the record shows that Mother had not visited with the Child since September 2022. N.T., 1/29/24, at 11. In fact, the caseworker testified that there was **not** a bond between Mother and the Child because Mother had not seen the Child in a long time, and the Child would not know Mother. *See id.* at 43-44 (emphasis added). Thus, Mother's claim that the "testimony of all parties involved is that a bond remains" is blatantly false. The orphans' court was free to make credibility determinations regarding Mother's and the Agency caseworker's testimony, and because those determinations are supported by the record, we must accept them. *See T.S.M.*, 71 A.3d at 267 (citation omitted).

We also disagree with Mother's contention that her ability to bond with the Child was inhibited by the Agency and foster mother. *See* Mother's Brief at 16; *see also* N.T., 1/29/24, at 23. Again, Mother cited nothing in the record to support this contention. The record reflects that Mother's ability to bond with the Child was inhibited by **Mother's** own actions. The Agency caseworker testified that Mother had not visited the Child since September 2022, even though Mother was never prohibited from visiting. N.T., 1/29/24, at 11. The caseworker stated that the Agency lost contact with Mother after

that visit but conducted diligent searches for her through her last known phone number and address, maternal grandmother, and the foster mother (because the foster mother is a kinship placement). *Id.* at 12-13. Mother also conceded that she never reached out to the Agency. *Id.* at 36. We note "the parental obligation is a positive duty which requires affirmative performance." *B.,N.M.*, 856 A.2d at 855 (citation omitted).

Further, Mother's claims that she did not have any video or phone contact with the Child because foster mother prohibited such contact are also unavailing. *See* N.T., 1/29/24, at 23. Significantly, the orphans' court questioned the veracity of Mother's belief that she was not permitted to contact the Child. *See* O.C.O. at 14. Indeed, the record indicates that Mother testified during the hearing that she did have contact with the Child's foster mother. *See* N.T., 1/29/24, at 21, 36, 56. Thus, we discern no error of law or abuse of discretion in the orphans' court's decision to terminate Mother's rights under Section 2511(b).

In sum, we hold that the orphans' court did not abuse its discretion or commit an error of law in terminating Father's and Mother's parental rights pursuant to Section 2511 of the Adoption Act.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/19/2025