J-S29017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.J.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 468 WDA 2025 |

Appeal from the Order Entered March 20, 2025
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): 095 of 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.J.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 469 WDA 2025 |

Appeal from the Order Entered March 20, 2025
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): 096 of 2024

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:             **FILED: SEPTEMBER 29, 2025**

J.J.S. ("Father") appeals from the orders granting the petitions of E.A.F. ("Mother") and A.F. ("Stepfather") (collectively, "Petitioners") to involuntarily terminate Father's parental rights to his son, C.J.S. (born in February 2008) and daughter, A.A.S. (born in December 2009) (collectively, "the Children"). We affirm.

The relevant factual and procedural history of this follows. Father and Mother were married in June 2006. *See* N.T., 2/6/25, at 4-5. They separated in 2011 after Mother obtained a protection from abuse ("PFA") order against Father after he allegedly "kicked" C.J.S. in the head. *Id*. at 4-6, 80-81. In June 2012, Father filed a custody complaint. In September 2012, the court entered an interim custody order that awarded Mother sole legal custody and primary physical custody of the Children, while Father was awarded supervised partial physical custody twice per week for four hours per visit. In June 2013, Mother and Father executed a consent custody order that continued Mother's award of primary physical while providing for shared legal custody. Father's supervision requirements were also lifted and he was granted increased partial physical custody of the Children every other weekend. *See* Trial Ct. Op., 4/17/25 (unnumbered at 4).

In 2013, Petitioners met and entered into a romantic relationship. *See* N.T., 2/6/25, at 5. Mother and Father formally divorced in May 2014. Sometime during 2014, Father filed a police report alleging that Stepfather had "choked" C.J.S. *Id*. at 84.[1] In August 2015, Mother raised concerns regarding Father's housing and general ability to provide care for the Children, including a lack of heating, food, and clothing available in his residence. *See*

---

[1] It is uncertain whether charges were filed against Stepfather, and, if so, what their disposition was. *See* N.T., 2/6/25, at 84. Father testified charges were filed but dismissed. *See id*. at 84.

*id*. at 54. The trial court subsequently returned sole legal custody to Mother and reduced Father's physical custody during the school year to one supervised visit per week, and every other weekend during the summer. *See* Trial Ct. Op., 4/17/25 (unnumbered at 5). Father's periods of physical custody were to be supervised by the Children's paternal grandmother. *See id*.

In 2016, Father was charged and convicted of theft by unlawful taking and robbery involving bodily injury for which he served a ninety-day prison sentence. *See* N.T., 2/6/25, at 122-23. Based on Father's criminal activity, and additional concerns that paternal grandmother was not properly supervising visits, the trial court ordered that Father's visits with the Children be supervised by an agency beginning August 2016. *See id*. at 7-8; *see also* Trial Ct. Op., 4/17/25 (unnumbered at 5-6). Consequently, Father's last unsupervised contact with the Children occurred in 2015, when they were approximately seven and five years old. *See* N.T., 2/6/25, at 46-47.

Beginning in March 2018, Father's supervised visits with the Children were transitioned to "parent-child reconciliation sessions." Trial Ct. Op., 4/17/25, at 7. Between March 2018 and September 2021, the trial court unsuccessfully referred Father to three different therapy providers in furtherance of these reconciliation sessions. *See* N.T., 2/6/25, at 8-13, 47-48. Father failed to complete the intake process for all three providers. *See id*. It is unclear from the record to what extent Father had any regular contact or visitation with the Children during these intervening three and a half years.

In October 2021, Father completed the intake process for a fourth referred provider and successfully participated in two reconciliation sessions with the Children. *See id*. at 12. Thereafter, however, the Children, then twelve and thirteen years old, refused to participate in any further reconciliation sessions with Father. *See id*. Consequently, the trial court directed Father to enroll in individualized therapy and provided that his therapeutic visits with the Children would recommence once he began treatment. *See id*. at 13, 47-49. Father, however, did not seek counseling, and the therapeutic visits never resumed. *See id*. His last in-person contact with the Children occurred in November 2021. *See id*. at 15-16.

In the interim, Petitioners, Mother and Stepfather, were married in June 2019. *See id*. at 4. Additionally, between June 2017 and September 2023, Father filed at least ten petitions to modify custody alleging that Mother was engaging in parental alienation and claiming that his circumstances had changed in a fashion that warranted additional periods of unsupervised physical custody. *See generally* Trial Ct. Op., 4/17/25 (unnumbered at 6-10). None of Father's petitions resulted in any substantial changes in the custody parameters. *See id*.

In October 2024, Petitioners filed petitions seeking to involuntarily terminate Father's parental rights to the Children pursuant to 23 Pa.C.S.A.

§ 2511(a)(1), (2), and (b).[2]   The trial court held a hearing on February 6, 2025, at which Petitioners and Father testified.   Additionally, the Children's court-appointed attorneys each reported that the Children wished for Father's parental rights to be terminated so that Stepfather could adopt them.   ***See*** N.T., 2/6/25, at 133-34.   At the time of the hearing, the Children were sixteen and fifteen years old.

On March 20, 2025, the trial court filed orders, and accompanying opinions, granting Petitioners' termination petitions pursuant to section 2511(a)(1), only, and (b).   ***See*** Trial Ct. Op., 4/17/25 (unnumbered at 15). Both Father and the trial court complied with Pa.R.A.P. 1925.[3]

Father raises the following issue for our review:

I.   Whether the lower court erred in terminating . . . Father's parental rights under . . . section 2511(a)(1) . . .  by failing to consider all of the factual matters required by law[,] including participation of father continuously litigating the private custody action to enlarge custody time with the Children?

Father's Br. at 5 (unnecessary capitalization omitted).[4]

_____

[2]  The court appointed both a guardian *ad litem* ("GAL") and legal interest counsel to represent the Children during these proceedings, both of whom have filed briefs in support of termination.

[3] On May 9, 2025, this Court consolidated these cases *sua sponte*.

[4] As stated above, the trial court granted the petitions to terminate Father's parental rights based on section 2511(a)(1) and denied the petitions as to section 2511(a)(2).   Although Father's statement of question of the issue involved on appeal referred to section 2511(a)(2), we have omitted the reference to that subsection.   Moreover, as discussed below, Father has
*(Footnote Continued Next Page)*

Our standard of review is as follows. This Court reviews orders involuntarily terminating an individual's parental rights for an error of law or abuse of discretion. *See In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *Id*. Thus, we must consider whether the trial court's order is supported by competent evidence. *See In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). Furthermore, we must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *See Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Subsection 2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *See id*. § 2511(b). *Accord In re M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

---

abandoned a challenge to the trial court's findings as to section 2511(b). *See* Father's Br. at 5 (indicating that Father has "withdrawn" any challenge to the findings under section 2511(b))

The trial court terminated Father's parental rights pursuant to section 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b). While the term "parental duties" are not defined by the Act, Pennsylvania courts have long interpreted parental duties "in relation to the needs of a child[,]" including "love, protection, guidance and support." *L.A.K.*, 265 A.3d at 592 (internal citation omitted). Thus, "[p]arental duties are carried out through affirmative actions that develop and maintain the parent-child relationship." *Id*. (internal citation omitted). Moreover, "[t]he roster of such positive actions undoubtedly includes communication and association." *Id*.

In applying section 2511(a)(1), this Court has further explained:

A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. This [C]ourt has repeatedly recognized that parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs.

*In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003) (internal citations and quotations omitted). Sufficient grounds pursuant to section 2511(a)(1) exist where, *inter alia*, the parent demonstrates a failure to take an active role in attempting to form and maintain a parental relationship with his child. *See In re E.S.M.*, 622 A.2d 388, 394 (Pa. Super. 1993); *In re B., N.M.*, 856 A.2d 847, 859 (Pa. Super. 2004).

While we must "avoid the mechanical application of the . . . Act, we may not ignore that the General Assembly has drawn focus to the six months immediately preceding the filing of the termination petition." *L.A.K.*, 265 A.3d at 592. Nonetheless, "a parent's failure or refusal to perform parental duties must be analyzed in relation to the particular circumstances of the case." *Id*. (internal citation and quotations omitted). Our Supreme Court has identified three additional lines of factual inquiry that are required in cases involving section 2511(a)(1), which includes: (1) the parent's explanation for his absence; (2) the post-abandonment contact between parent and child, including a parent's efforts to re-established contact; and (3) consideration of

the effect of termination of parental rights on the child pursuant to section 2511(b). **See C.M.**, 255 A.3d at 365.

Father argues the trial court erred in terminating his parental rights pursuant to section 2511(a)(1) because he "had continuously litigated in the private custody action to increase his custodial time with his children." Father's Br. at 16. While "conceding" that he has been estranged from the Children "since 2021," Father maintains that his pursuit of custody litigation should preclude the termination of his parental rights pursuant to section 2511(a)(1). **See id**. at 16-17. Specifically, he claims that his pursuit of litigation demonstrates "his unwillingness to surrender his parental rights[.]" **Id**. at 17. We disagree.

Overall, the trial court concluded that "[i]t is undisputed that Father has not performed any parental duties nor has Father maintained any sort of purposeful contact with [the Children] in years despite the ability to do so." Trial Ct. Op., 4/17/25 (unnumbered at 15). We find more than ample support for the trial court's findings in the certified record. Specifically, the testimony of the parties fully corroborates the trial court's finding that that Father has not performed any pertinent parental duties since at least November 2021, nor did he make efforts to maintain contact with the Children. **See** N.T., 2/6/25, at 8-13, 47-49, 117. As the trial court concluded, there is no dispute on this particular point.

Our Supreme Court, however, has identified a parent's participation in custody litigation to be a "highly relevant" consideration. *C.M.*, 255 A.3d at 367-68 (holding that a parent's "proactive participation" in custody litigation during the six-month period preceding the filing of a termination petition precluded termination under section 2511(a)(1)). Specifically, the High Court has explained: "[T]hough an appropriate analysis will differ from case to case, when undertaken in earnest to establish meaningful contact with a child who is otherwise withheld from access by the custodial parent, a noncustodial parent's legal attempts to enforce custodial rights will usually be highly relevant evidence." *Id*. at 367.

Our review of the record contradicts Father's claim that he has been a "proactive" participant in the underlying custody litigation. As detailed above, Father ceased being a "proactive" participant in the custody litigation when the court transitioned his visits with the Children to "parent-child reconciliation sessions" in March 2018. Trial Ct. Op., 4/17/25 (unnumbered at 7); *see also* N.T., 2/6/25, at 8-13, 47-49. Thereafter, between March 2018 and September 2021, the certified record indicates Father failed to complete intakes at three different therapy providers, which largely precluded visits with the Children. *See* N.T., 2/6/25, at 8-13, 47-49. During these intervening three and one-half years, it is unclear what, if any, contact Father had with the Children. *See id*. Although Father completed a fourth intake referral in October 2021 and successfully participated in two reconciliation sessions with

the Children, he again failed to follow-through when directed to begin individual therapy once the Children refused to attend further reconciliation sessions with him. *See id*. at 12-13, 47-49. Thus, Father became fully estranged from the Children in November 2021 due to his own failure to proactively participate in custody litigation by attending his own individual therapy sessions. *See id*. at 15-16.

We acknowledge Father filed over a half-dozen petitions to modify custody between June 2017 and September 2023. *See generally* Trial Ct. Op., 4/17/25 (unnumbered at 6-10). Yet, while he was submitting these fruitless serial filings, Father was simultaneously refusing to comply with the straightforward directives that would have permitted him to associate and communicate with the Children, *i.e.*, participation in individual therapy. *See* N.T., 2/6/25, at 8-13, 47-49. Critically, there are also no indications that Father made any attempt to enforce his legal custody rights during the six-month lookback period established by section 2511(a)(1). *See L.A.K.*, 265 A.3d at 592; *see also* Trial Ct. Op., 4/17/25 (unnumbered at 6-10) (indicating that Father's last custody filing was fully adjudicated in September 2023).

Based upon the foregoing, the record supports the trial court's conclusion that grounds existed for termination pursuant to section 2511(a)(1), notwithstanding Father's legal attempts to enforce his custodial rights, because the record supports the trial court's conclusion that Father, who last saw the Children in November 2021, failed to take any steps to play

an "active role" in parenting the Children or attempting to maintain "purposeful contact" with them. *Cf*. *C.M.*, 255 A.3d at 367-68. Father's filing of custody petitions, alone, does not qualify as "proactive participation" in custody litigation under these specific facts. Thus, we find no abuse of discretion or error of law in the trial court's finding that Father failed to perform parental duties in the six months immediately preceding the filing of the termination petitions. Indeed, Father's failure to perform parental duties spanned several years, including the six-month period specified in section 2511(a)(1).

With respect to the additional inquiries under section 2511(a)(1) identified by our Supreme Court, Father's only explanation for his failure to perform parental duties are bald allegations that Mother generally engaged in "parental alienation" that impeded his ability to exercise his custody rights. Father's Br. at 18 ("The issue of alienation was raised numerous time[s] in the modification of custody petitions file[d] between 2012 and 2023"). Aside from averring that he unsuccessfully raised these allegations in his many custody petitions, however, Father's arguments have not referenced, or discussed, any evidence establishing the alleged alienation. *See id*.

Moreover, the trial court noted Father's attempt to "impute[] blame on Mother for hindering said relationship for her benefit," but it apparently did not credit Father's averments. *See* Trial Ct. Op., 4/17/25 (unnumbered at 14). To the extent Father argues that the trial court should have credited his

- 12 -

alienation claims above Mother's testimony concerning his lack of contact with the Children and serial failures to comply with custody directives, we may not reweigh the evidence. *See S.K.L.R.*, 256 A.3d at 1123 (indicating that we are bound by the trial court's credibility findings so long as they are supported by the certified record).

With respect to Father's post-abandonment contact with the Children, the record evidence clearly indicates that his last relevant contact with the Children occurred in November 2021. *See* N.T., 2/6/25, at 15-16. Overall, Father had no pertinent contact with the Children for nearly three years by the time Petitioners filed the subject termination petitions.[5]

Next, we discuss the best interests analysis pursuant to section 2511(b). As noted above, Father has declined to offer any argument concerning the trial court's findings pursuant to section 2511(b). *See* Father's Br. at 5. Thus, Father has waived any arguments concerning the trial court's findings pursuant to section 2511(b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority").

_____

[5] Father's only other contact with the Children occurred when he briefly texted with C.J.S. after the Petitioners' filing of the subject termination petitions. *See* N.T., 2/6/25, at 118-19. Since this appeal concerns section 2511(a)(1), however, we are precluded from considering "any efforts by the parent to remedy" the stated grounds for termination. 23 Pa.C.S.A. § 2511(b). Thus, we may not consider Father's post-filing contact with C.J.S. *See id*.

Even assuming, *arguendo*, that Father had not waived this aspect of his claim for relief, he would not be entitled to relief. Section 2511(b) gives "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. We remain mindful that "the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," with an eye towards "each child's specific needs." *Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023). This inquiry is neither formulaic, nor mechanical. *See id.*

Our review must include consideration of the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has explained that "only a necessary and beneficial" parental bond should be maintained. *K.T.*, 296 A.3d at 1109. A bond is considered "necessary and beneficial" if its severance would cause extreme emotional consequences or irreparable harm. *Id*. at 1109-10. The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). Finally, a child's "emotional needs and welfare include intangibles such as love, comfort, security, and stability." *K.T.*, 296 A.3d at 1106.

With respect to the mandated bonding analysis, it is well-established that, "in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *In re Adoption of J.M.*,

991 A.2d 321, 324 (Pa. Super. 2010). At the hearing, Father conceded that he does not share any form of parental bond or relationship with the Children:

> [MOTHER'S COUNSEL]: Do you have any relationship with these children at this point in time?
>
> [FATHER]: I would say no.

N.T., 2/6/25, at 122. Father's concession was corroborated by the Children's legal interest counsel, who reported that the Children were strangers to Father: "[B]oth of them basically stated that they don't know [Father]. So, as a result, there's not a relationship there." *Id*. at 133. Thus, terminating Father's parental rights will not sever a "necessary or beneficial" bond pursuant to section 2511(b), and the trial court committed no error in concluding that termination of Father's rights was in the Children's best interests pursuant to section 2511(b). *See* Trial Ct. Op., 4/17/25 (unnumbered at 16-17); *see also K.T.*, 296 A.3d at 1009-10.

Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's conclusion that involuntary termination of Father's parental rights was warranted under section 2511(a)(1) and (b). Accordingly, we affirm the orders involuntarily terminating Father's parental rights to the Children.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>9/29/2025</u>